Argued and submitted June 3, reversed and remanded December 16, 2009

Eric MALAN,
as Personal Representative of
the Estate of James Harold Woodard,
*Plaintiff-Appellant,*

*v.*

Linda TIPTON,
Art Mills,
dba Credit Bureau of Klamath County,
and Eugene V. Anderson,
*Defendants,*

*and*

Lucille JENNER,
as Personal Representative of
the Estate of Linda L. Tipton,
aka Linda Spears,
*Defendant-Respondent.*

Klamath County Circuit Court
0600801CV; A136333

222 P3d 754

Andrew C. Brandsness argued the cause for appellant. With him on the briefs was Brandsness, Brandsness & Rudd, P.C.

Eugene V. Anderson argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff, the personal representative of the estate of James Harold Woodard, appeals from a judgment for defendant in an action for the judicial foreclosure of a note and trust deed secured by defendant's residence.[1] The trial court ruled for defendant on the affirmative defense of tender pursuant to ORS 81.010. We reverse and remand.

The relevant facts of this case are undisputed. In July 2002, James Harold Woodard made a loan to Linda Tipton. The loan was secured by a trust deed to Tipton's residence. The terms of the loan required Tipton to pay equal monthly installments to Woodard. The trust deed contained a "time is of the essence" clause. Woodard died in March 2004. Later that year, Eric Malan, the personal representative of Woodard's estate, began the process of nonjudicial foreclosure on Tipton's residence, alleging that Tipton had missed payments. In December 2004, Tipton filed an action against Malan to stop the foreclosure.

The parties agreed to settle the pending litigation in September 2005. Under the terms of the settlement agreement, Tipton was to make payments to Malan by the tenth of each month. The parties agreed that Tipton would continue to make the monthly payments due under the original agreement until the parties agreed on how the balance on the loan would be amortized. The settlement agreement also contemplated that Tipton would establish an escrow account at a local title company into which she could make the monthly payments. According to Tipton's trial testimony, immediately after the settlement conference concluded in September 2005, Malan either told Tipton or stated in her presence that if she was even one day late with a payment, he would initiate foreclosure proceedings. The payments due under the note in October, November, and December 2005 were made timely to an account that had been established during the pendency of the litigation. However, that account was closed in December 2005.

---

[1] Linda Tipton died shortly after the trial in this case; the defendant on appeal is her estate.

In November 2005, Tipton's attorney began the process of establishing an escrow account. In order to set up the account, the title company needed to have documentation of the exact amount due on the loan and the amount of each payment, as well as the original trust deed and note. Tipton's attorney contacted Malan's attorney to begin negotiations on those issues and asked Malan's attorney to provide the original trust deed and note to him. By January 4, 2006, it appeared that the escrow account could not be established in time for Tipton to make the payment due on January 10. Tipton attempted to make her January payment to the title company, but it refused to accept her check because the escrow account had not yet been established. Tipton then sent a check in the amount of the payment due under the original agreement to her attorney, who deposited it in his trust account. On January 5, 2006, Tipton's attorney mailed and faxed a letter to Malan's attorney that discussed more details concerning the escrow account and further provided:

"If the account is established before January 10, 2006[, Tipton] will make the payment directly to [the title company]. In the event that the account is not established before January 10th, I have asked my client to mail me a payment (in the old amount) so that I can hold those funds as soon as the account is established, or pay them to your trust account. Alternatively[,] I can instruct my client to tender the payment directly to you before January 10th. In any event, my client intends tendering the January 2006 payment on a timely basis in any way you deem appropriate. Please let me know how you would like to receive that payment, assuming your client is not able to review the collection account agreement, or deliver the note and trust deed on time.

"Please call if you have any questions or concerns."

On January 6, 2006, the attorneys for Malan and Tipton had a telephone conversation in which they discussed the terms of the escrow account. They did not discuss the January 5 letter or where Tipton could make the payment due on January 10. Tipton and her attorney did not receive any response from Malan or his attorney regarding the January 5 letter. On January 9, Tipton's attorney wrote a

check from his trust account to Malan's attorney's trust account for the amount of the payment and put the check in the mail to Malan's attorney. He also faxed copies of the letter and the check to Malan's attorney that day.

Malan's attorney received the letter and the check in the mail on January 12, 2006. Malan's attorney did not cash the check. Instead, Malan filed the complaint that initiated this foreclosure action in February 2006. As noted, the trial court entered judgment for Tipton. On appeal, Malan makes two assignments of error. In his first assignment of error, he argues that the court erred in finding that Tipton made a valid tender pursuant to ORS 81.010. In the second assignment of error, he argues that the trial court erred in awarding defendant attorney fees. We need not address the second assignment of error because we agree with plaintiff's argument under his first assignment of error.

█    The judicial foreclosure of a trust deed is an equitable proceeding. Although we review cases in equity *de novo*, ORS 19.415(3),[2] this case turns on a question of law. To constitute a lawful tender of money, the money itself must actually be produced and made available for the acceptance and appropriation of the person to whom it is offered, or, alternatively, the tender must satisfy the requirements of ORS 81.010. *McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 290, 193 P3d 9 (2008). Here, Tipton and her attorney did not actually produce and make available to plaintiff the money that was due for the January payment in a timely manner. Consequently, defendant can prevail only if the actions on her behalf qualify as a lawful tender under ORS 81.010. It provides:

> "An offer in writing to pay a particular sum of money or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

---

[2] ORS 19.415(3), which governs our standard of review in equitable cases, was recently amended by Oregon Laws 2009, chapter 231, section 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments are inapplicable.

The trial court reasoned in this case that:

> "Ms. Tipton made a valid tender of the January payment and the estate is therefore not entitled to foreclose even though its attorney received the check two days after the due date. Unless the contract provides otherwise, it is the duty of the debtor to get the payment into the possession of the creditor. *Gordon v. Schumacher*, 83 Or App 544, 733 P2d 35 (1987). However, where the debtor makes diligent inquiry and receives no response, she should not suffer consequences if she is left to speculate where she should leave her money."

■■    Under the common law, the word "tender" meant " 'the actual production, in current coin of the realm, of a sum not less than the amount due.' " *Equitable Life Assur. Soc. v. Boothe*, 160 Or 679, 683, 86 P2d 960 (1939) (quoting *Douglas v. Patrick*, 3 TR 683, Rev Rep 793, 6 Eng Rul Cas 589; 26 RCL, p 622). "Except as modified by statute, the common law definition of tender is still applicable in this state." *Bembridge v. Miller*, 235 Or 396, 403, 385 P2d 172 (1963). In essence, ORS 81.010 provides that an offer to pay in writing is equivalent to the actual production and tender of money if the money is made available to the person to whom the money is owed. Under those circumstances, the statute operates to dispense with actual production of the money when the person to whom money is owed refuses to accept the tender. *Hartman v. Stark*, 99 Or 596, 601, 195 P 1117 (1921). Thus, "the only distinction between 'tender' and payment lies in the fact that a 'tender' is not accepted while a payment is." *Bembridge*, 235 Or at 402.

■    Defendant argues that the January 5 letter was the equivalent of the actual production of the money under the terms of the statute. Plaintiff counters that the January 5 letter was at best only a naked offer to pay, unaccompanied by any readiness or ability to pay, and therefore not a proper tender under the statute. We agree with plaintiff's argument. The January 5 letter does not inform plaintiff that the money for the payment is available in counsel's trust account or that it can be withdrawn on or before the date that it is due. Rather, the letter states that counsel has asked his client to mail the payment to him so that it can be held in his trust account.

Moreover, the actual tender of the payment from defense counsel to plaintiff's counsel was not received by plaintiff's counsel until January 12, 2006, or two days after the deadline for payment. The statute, by its terms, requires that a tender in lieu of actual performance be received by the obligee within the time period contemplated by the agreement so that the obligee can respond to it by accepting it or refusing to accept it. Here, plaintiff could not have been deemed by the law to have refused to accept the tender within the time period contemplated by the settlement agreement because tender was not received by him until January 12.

■ Nonetheless, the trial court concluded that "where the debtor makes diligent inquiry and receives no response, she should not suffer consequences if she is left to speculate where she should leave her money." The trial court was understandably sympathetic to Tipton's circumstances; nonetheless, "a debt is payable at the place where the creditor resides, or at his place of business, if he has one, * * * and it is ordinarily the duty of the debtor to seek the creditor for the purpose of making payment." *Sterrett v. Stoddard Lbr. Co.*, 150 Or 491, 506, 46 P2d 1023 (1935) (internal quotation marks omitted).

■ Even if the January 5 letter had included the necessary statement of the availability of the money for payment to make it a valid tender under the statute, the mere inaction of Malan and his attorney would not be sufficient to discharge Tipton from her duty to pay. Had Malan responded to a proper tender by indicating that he would not accept a check from Tipton or her attorney, the tender in addition to Malan's indication that he would not accept it could have been sufficient to discharge Tipton from her duty to pay. Otherwise, in the absence of any response from Malan, Tipton continued to have a contractual duty to seek Malan out and pay him on time.

We conclude for the above reasons that the trial court erred in concluding that Tipton's January 5 letter was a tender that excused the late payment. Accordingly, the trial court erred in entering judgment for defendant on the

affirmative defense of tender. The judgment of the trial court must be reversed and the case remanded.

Reversed and remanded.