Argued and submitted September 14, 2010, decision of Court of Appeals reversed;
judgment of circuit court affirmed February 19, 2011

Eric MALAN,
as Personal Representative of
the Estate of James Harold Woodard,
*Respondent on Review,*

*v.*

Linda TIPTON,
Art Mills,
dba Credit Bureau of Klamath County;
and Eugene V. Anderson,
*Defendants,*

*and*

Lucille JENNER,
as Personal Representative of
the Estate of Linda L. Tipton, aka Linda Spears,
*Petitioner on Review.*

(CC 06-00801-CV; CA A136333; SC S058156)

247 P3d 1223

Eugene V. Anderson, Medford, argued and submitted the brief for petitioner on review.

Andrew C. Brandsness, Klamath Falls, argued and submitted the brief for respondent on review.

Scott A. Shorr and Keil M. Mueller of Stoll Stoll Berne Lokting & Shlachter P.C., Portland, filed the briefs for *amicus curiae* Oregon Trial Lawyers Association.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

WALTERS, J.

** Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

## WALTERS, J.

An Oregon statute provides that, when a debtor makes a written offer to pay a particular sum of money to a creditor and the creditor does not accept the offer, the offer is equivalent to the actual production of the money. ORS 81.010.[1] In this case, we apply that statute and decide that the trial court was correct in concluding that defendant, a debtor, made a valid written offer of payment under ORS 81.010; that plaintiff, a creditor, did not accept it; and that defendant's offer was equivalent to the actual production of the sum offered. As a result, the trial court also was correct in concluding that defendant was relieved from liability for the consequences of nonpayment other than liability for the debt itself—in this case, from foreclosure of the trust deed on the home that secured the debt. We reverse the contrary decision of the Court of Appeals.

The relevant facts in this case are undisputed. On July 15, 2002, defendant borrowed $61,500 from James Woodard, executed a promissory note and trust deed agreeing to repay that sum, and secured that agreement with her residence.[2] Woodard died in March 2004, and plaintiff was appointed as the personal representative of Woodard's estate. Plaintiff hired an attorney, Henderson, to represent the estate.

After reviewing the estate's records, plaintiff concluded that defendant had failed to make timely payments on the note and commenced a nonjudicial foreclosure of the trust deed. Defendant contested the foreclosure and, in December 2004, hired an attorney, Anderson, to file an action in circuit court to halt it. While that proceeding was pending, defendant attempted to continue making the required monthly payments. Plaintiff instructed Henderson not to accept such payments, but defendant nevertheless sought to perform by slipping the checks under Henderson's office door or running

---

[1] ORS 81.010 provides:

"An offer in writing to pay a particular sum of money or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

[2] Defendant died shortly after trial of this case and defendant on appeal is the personal representative of her estate. ORAP 8.05(1); ORCP 34 B.

in and dropping a check at his front desk. Eventually, defendant obtained a court order permitting defendant to make the monthly payments to the court.

Before the case could be tried, the parties entered into a settlement agreement, dated September 12, 2005, that permitted defendant to retain the home that constituted security for payment of the debt.[3] The agreement provided that the funds that defendant had paid into court would be released to plaintiff, and required that defendant set up a collection escrow account with a title company. The first payment to that account was due January 10, 2006.[4]

When defendant sought to set up the collection escrow account, the title company informed her that it could not do so without additional information from both parties. Defendant discussed the title company's request for information with plaintiff, but, when defendant took her payment to the title company in early January, the title company would not accept it, asserting that it still had been unable to establish the account.

On January 5, 2006, Anderson, defendant's attorney, mailed and faxed a letter to Henderson, plaintiff's attorney, stating the following:

---

[3] The relevant portion of the settlement agreement provides:

"IN CONSIDERATION of the Releases set forth below in Section 2, the parties agree as follows:

"a. The trust deed and note, copies of which are attached hereto and by this reference incorporated herein are paid current and the trust deed and note currently have a balance of $51,977.00.

"b. That all funds paid by [defendant] into court as payments on the trust deed and note shall be released by the court to [plaintiff].

"c. The [defendant] will set up a collection escrow at [the title company] and the expenses of the escrow set up and monthly collection for the trust deed shall be paid by [defendant].

"d. The interest rate on the trust deed and note shall be 6.7 percent.

"e. Each party shall pay their own attorney's fees incurred in this litigation."

[4] Although the settlement agreement was dated September 12, 2005, defendant did not sign the agreement until December 5, 2005. Until that date, defendant continued to make monthly payments into court.

"If the account is established before January 10, 2006[, defendant] will make the payment directly to [the title company]. In the event that the account is not established before January 10th, I have asked my client to mail me a payment (in the old amount) so that I can hold those funds as soon as the account is established, or pay them to your trust account. Alternatively I can instruct my client to tender the payment directly to you before January 10th. In any event, my client intends tendering the January 2006 payment on a timely basis in any way you deem appropriate. Please let me know how you would like to receive that payment, assuming your client is not able to review the collection account agreement, or deliver the note and trust deed on time."

Neither Henderson nor plaintiff answered that letter. On January 6, 2006, Anderson and Henderson discussed the debt by telephone, but did not discuss where defendant should make payment. That same day, Anderson sent a letter to the title company and faxed a copy of that letter to Henderson stating the following:

"[Defendant] has deposited the January, 2006 payment in my trust account, in the amount of $579, which I will pay either to [the title company] as soon as the collection account is established, or to Mr. Henderson, if he would like to accept the payment into his trust account in the meantime.

"\* \* \* \* \*

"I have faxed this letter and the enclosures[5] to Mr. Henderson for his comment. I would like to get his client's approval as soon as possible, so that we may open the account before the January payment is late."

Neither the title company nor Henderson responded to the letter or fax. On January 9, 2006, Anderson mailed and faxed a final letter to Henderson, enclosing a check drawn on Anderson's trust account and made out to Henderson's trust account, stating:

---

[5] Enclosed with the letter was a printout from the circuit court showing all of the payments that defendant had made to the court throughout the history of the case and an amortization table for the original loan amount.

"Please find enclosed a check, made payable to 'Blair Henderson, Lawyer Trust Account', in the amount of $579.00 as [defendant's] payment for January 2006. Please let me know if there are any other issues with establishing the [escrow] collection account."

On January 12, 2006, two days after the January 10 due date, Henderson received the check at his office. The amount of the check was greater than the required monthly payment and Anderson's trust account had sufficient funds to cover the check. Nonetheless, Henderson did not cash the check. On February 23, 2006, plaintiff commenced this judicial foreclosure action, declaring, in the complaint, that defendant was in default and that payment was due in full.

The trial court conducted a bench trial, issued a letter opinion, dismissed the foreclosure action, and entered judgment for defendant. In its letter opinion, the trial court concluded that defendant had satisfied the requirements of ORS 81.010.

The trial court found that defendant had made a written offer to pay a sum greater than that due under the settlement agreement, that Anderson had sufficient funds in his trust account to make that payment, and that the estate had not responded to defendant's offer. The court concluded that defendant had made a valid written offer of payment and that plaintiff was not entitled to foreclose.

Plaintiff appealed, and the Court of Appeals reversed. *Malan v. Tipton*, 232 Or App 464, 222 P3d 754 (2009). First, the Court of Appeals concluded that the January 5 letter did not comply with ORS 81.010. The court reasoned that that letter

"does not inform plaintiff that the money for the payment is available in counsel's trust account or that it can be withdrawn on or before the date that it is due. Rather, the letter states that counsel has asked his client to mail the payment to him so that it can be held in his trust account."

*Id*. at 469. As a result, the court agreed with plaintiff that the letter was "at best only a naked offer to pay, unaccompanied by any readiness or ability to pay[.]" *Id*.

Second, the Court of Appeals concluded that even if the January 5 letter had "included the necessary statement of the availability of the money," plaintiff did not respond by stating that he would not accept a check from defendant. *Id.* at 470. Had plaintiff done so, the court reasoned, defendant's offer, in addition to plaintiff's rejection, would have relieved defendant of her duty to pay. However, in the absence of any response from plaintiff, defendant had a continuing duty to make timely payment and did not do so. *Id.* Defendant sought review of the decision of the Court of Appeals, which we allowed.

In this court, defendant claims that the Court of Appeals erred in two respects. First, defendant claims that the court erred in concluding that the January 5 letter did not constitute a valid written offer of payment. Defendant argues that the court incorrectly considered that letter in isolation and failed to note that the letter of January 6 clearly indicates that the money necessary for payment is available in counsel's trust account. Defendant also argues that although a debtor must demonstrate, at the time of trial, that the necessary funds were available at the time of the offer, ORS 81.010 does not require that the written offer contain an express statement to that effect.

Second, defendant claims that the Court of Appeals erred in concluding that plaintiff's failure to reply to defendant's written offer was insufficient to trigger the statute's application. Defendant argues that the import of plaintiff's failure to reply to that offer was that the offer was "not accepted" as that phrase is used in ORS 81.010. As a result, ORS 81.010 requires that the written offer be treated as "equivalent to the actual production" of the sum offered.

Both of defendant's claims of error require us to construe ORS 81.010. At the first level of our analysis we consider the statute's text and context, including preexisting common law and prior relevant case law. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *Ram Technical Services, Inc. v. Koresko*, 346 Or 215, 232, 208 P3d 950 (2009); *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998).

ORS 81.010 has not been amended since it was enacted in 1862. General Laws of Oregon, Civ Code, ch X, title I, § 842, p 277 (Deady & Lane 1843-1872). It provides:

> "An offer in writing to pay a particular sum of money or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

Separated into its parts and simplified as relevant here, the text of that statute provides that when (1) a debtor makes "an offer in writing to pay a particular sum of money," and (2) the creditor does not accept that offer, (3) the offer is "equivalent to the actual production and tender" of the money.

■ At common law, when a contract required payment, whether in money or goods, the debtor did not complete performance until he or she delivered the money or goods *and* the creditor accepted the delivery. *Steel v. Island Milling Co.*, 47 Or 293, 297, 83 P 783 (1906). If the debtor produced the money, and the creditor did not accept it, the debtor had "tendered," but had not completed, performance. The sole difference between "tender" and "payment" was that payment was accepted; tender was not. *Bembridge v. Miller*, 235 Or 396, 402, 385 P2d 172 (1963).

When a contract required payment of money, a lawful "tender" of that money required the " 'actual production, in current coin of the realm, of a sum not less than the amount due.' " *Equitable Life Assur. Soc. v. Boothe*, 160 Or 679, 683, 86 P2d 960 (1939) (quoting *Douglas v. Patrick*, 3 TR 683, Rev Rep 793, 6 Eng Rul Case 589, 26 RCL, p 622). An offer to make a payment without the actual production of the money was not a "tender"; it was "at best only a naked offer to pay." *Bembridge*, 235 Or at 402.

■ If the debtor actually produced, or "tendered," the coin of the realm and the creditor did not accept it, the debtor was relieved from liability for the consequences of nonpayment other than the debt, such as interest on the debt, but not from liability for the debt itself. The debtor had done all that the contract required and the debtor's "liability should not be increased simply because the proffered sum [was] not accepted by the creditor." *Id.* at 403.

The common law of tender still applies in this state, except as modified by statute. *Id.* In enacting ORS 81.010, the legislature intended to modify one significant aspect of the common law of tender—that is, that the money, the coin of the realm, actually be produced for acceptance.

> "[The statute] simply dispenses with the necessity of actually producing and offering the money in the outset. It is a statute for convenience. It is a hardship to require a party who wants to pay off a debt or discharge an obligation, and the amount is large, to make an actual offer of it, and the legislature has substituted another mode[.]"

*Holladay v. Holladay*, 13 Or 523, 536-37, 11 P 260 (1886). That conclusion follows from the text of the statute, which provides that "an offer in writing to pay a particular sum of money," if not accepted, is "equivalent to the actual production and tender" of that sum.

■ With that text and context in mind, we turn to defendant's first claim—that the Court of Appeals erred in concluding that defendant did not make a valid "offer in writing to pay a particular sum." To constitute a valid offer of payment under ORS 81.010, a communication must contain a present offer of timely payment and cannot include any contradictory indication that the debtor is not ready and able to make that offer good. Although the text of ORS 81.010 does not so provide, its context makes that requirement apparent.

A tender, at common law, required the actual production of the money that was owed. ORS 81.010 permits a debtor to substitute a written offer of payment for the production of money. In *Bembridge*, this court interpreted that statute to require that the debtor making such an offer have the present ability to produce the sum offered. The court stated:

> "The legislature, in enacting ORS 81.010, did not intend to supersede the common law requirement that the person making the written tender have the present ability to make the tender good if it is accepted."

235 Or at 403. Although the court was discussing the debtor's burden of proof at trial, not the content of the written offer, it

follows, necessarily, that the terms of the offer must be consistent with the facts that a debtor must prove. Thus, to serve the same function as the production of money, and to satisfy the requirements of ORS 81.010, a written offer of payment must communicate a present offer of timely payment.

■ Measuring defendant's communications to plaintiff by that standard, we agree with plaintiff and the Court of Appeals that the letter from defendant's attorney, Anderson, dated January 5, standing alone, was insufficient. Although the letter indicated that defendant intended to make timely payment, it did not state that defendant was presently offering to do so. The letter indicated that at least one of two steps was required before payment could be made. Anderson had to ask for and receive funds from defendant or Anderson had to instruct defendant to pay Henderson directly.

■ The January 5 letter was not the only communication that defendant's attorney sent, however. On January 6, Anderson informed plaintiff's attorney, Henderson, that Anderson had received the sum of $579.00 from defendant and that Anderson "will pay" that sum to Henderson. The January 6 letter provided:

> "[Defendant] has deposited the January, 2006 payment in my trust account, in the amount of $579, which *I will pay* either to [the title company] as soon as the collection account is established, or to Mr. Henderson, if he would like to accept the payment into his trust account in the meantime."

(Emphasis added.) Thus, on January 6, Anderson, defendant's attorney, communicated, in writing, a present offer to timely pay a particular sum—$579.00—to plaintiff's attorney, Henderson. The Court of Appeals erred in not considering the letter of January 6 in its analysis and in concluding that defendant had not made a present offer of timely payment in compliance with ORS 81.010.

■ Although plaintiff does not take up the argument that, under ORS 81.010, a written offer of payment must include an express statement that the debtor has the funds necessary for payment, the Court of Appeals opinion could be read to impose that requirement, and we think it important

to negate it. It is true that a debtor who seeks the benefit of ORS 81.010 must prove, at trial, that he or she had the funds necessary for payment at the time the offer of payment was made. *Bembridge*, 235 Or at 402. But the court in *Bembridge* did not decide that a debtor must include an express statement to that effect in the written offer of payment. The court instead decided that the debtor had failed to meet his "burden of proof" at trial. *Id.* In reaching that decision, the court reviewed the facts of other cases which also considered the availability of funds to be an evidentiary matter. *See, e.g., Short v. Rogue River Irrigation Co.*, 82 Or 662, 673, 162 P 845 (1917) (facts demonstrated that debtor had not arranged to borrow money necessary for payment until after making offer of payment); *Eastern Oregon Land Co. v. Moody*, 198 F 7, 19 (9th Cir 1912) (facts showed that debtor's bank account overdrawn on date of offer). Neither precedent nor ORS 81.010 requires that a debtor's offer to pay a particular sum include an express statement that the debtor has the funds necessary to do so.

■    We now turn to defendant's second claim of error—that the Court of Appeals erred in deciding that, even if defendant made a valid written offer of payment, plaintiff's silence was insufficient to meet the requirements of ORS 81.010. The Court of Appeals decided that plaintiff's "mere inaction," was not sufficient to "discharge [defendant] from her duty to pay." *Malan*, 232 Or App at 470.

■    In reaching that conclusion, the Court of Appeals may have been under the misapprehension that a creditor's response to an offer of payment could result in the discharge of a debtor's payment obligation. It is important to reiterate that, at common law, the actual production of money did not relieve a debtor of the duty of payment; the production, if not accepted, only relieved the debtor of liability for the consequences of nonpayment, such as payment of interest or foreclosure. Under ORS 81.010, a written offer of payment, if not accepted, substitutes for and is equivalent to the actual production of money, but it does not serve to improve the debtor's position. In other words, a written offer to make payment under ORS 81.010, that is not accepted, does not serve to extinguish the underlying debt.

Resolution of the dispute between the parties in this case depends on the legal effect of a creditor's failure to respond to a debtor's offer of payment. Defendant contends that to accept a written offer of payment a creditor must do more than remain silent. Defendant does not dispute that if plaintiff had accepted defendant's offer of payment, defendant would have been required to make that offer good by delivering payment to plaintiff by January 10. However, defendant contends, plaintiff did not accept defendant's written offer to pay the sum of $579.00; plaintiff simply remained silent and the offer was "not accepted." Therefore, defendant argues, the offer was equivalent to the actual production of $579.00 and relieved defendant of liability for the consequences of nonpayment other than for the debt itself—in this case, foreclosure.

Plaintiff argues that when a creditor does not affirmatively reject a written offer of payment, he or she accepts it, in turn requiring that the debtor make good on the offer by making actual, timely payment. Plaintiff contends that, in this case, he did not affirmatively reject defendant's offer to pay and, therefore, defendant was required to make that offer good by making actual, timely payment. When defendant concededly did not do so, plaintiff contends, plaintiff was entitled to foreclose.

Plaintiff bases his argument not on the wording of the statute, but on the "unworkable scenarios" that, plaintiff contends, would ensue if a creditor's failure to respond to a written offer of payment were sufficient to satisfy the terms of ORS 81.010. For instance, plaintiff argues, if a creditor were to receive the following letter, he or she should not be required to respond in order to avoid the application of ORS 81.010:

> "I moved across town. Can I send the payment to a different branch of your bank or should I use the same one? If it's okay with you, I could mail it to your PO box."

We assume that plaintiff intends to pose the problem of an offer that seeks to modify the underlying agreement, rather than to pay in accordance with that agreement. Given that assumption, the hypothetical that plaintiff poses does not meet the requirements of ORS 81.010. To make a valid

offer of payment under ORS 81.010, a debtor must make an unconditional offer to pay in accordance with the terms of the underlying agreement. If the creditor believes that the terms of the offer do not meet that standard, the creditor may object to its validity. *See* ORS 81.020 (providing for waiver of certain objections to an offer of payment); *State Highway Com. v. Efem Whse. Co.*, 207 Or 237, 246, 295 P2d 1101 (1956) (quoting proposition that creditor may waive objection to amount, place, or medium of tender if that tender not unconditional). Just as a debtor at common law could not obtain the benefits of the actual production of money if he or she delivered the coin of the realm at a place to which the creditor did not agree and to which the creditor objects, so, too, a debtor cannot obtain the benefits of ORS 81.010 by offering to make payment at a place to which the creditor did not agree and to which the creditor objects.

■ The problem that plaintiff poses does not engage the facts of this case, however. Plaintiff did not at the time, and does not now, object that defendant's written offer was invalid because it proposed payment in the wrong amount or place. In fact, key to the result in this case, plaintiff insists that Henderson's trust account was "a proper place to make the payment."[6] Plaintiff does contend, in this court, that defendant's offer was invalid because it attempted to extend the time for payment by offering to make payment to the title company after the account was established. Plaintiff did not voice that objection at the time of defendant's offer, but, even if plaintiff had done so, that objection would not have been well taken. Defendant's letter of January 6 clearly proposed timely payment to Henderson's trust account.

Plaintiff's next objection to defendant's proposed interpretation of ORS 81.010 is again a practical, not a textual, one. Plaintiff argues that a debtor with no uncertainty about whether a creditor would accept performance could

---

[6] There is a legal and factual basis for plaintiff's position. The settlement agreement required that defendant set up a collection escrow account but did not specifically require defendant to make payments to that account or provide that that account was the exclusive place of payment. A debt also may be payable at the place where the creditor resides, at the creditor's place of business, " 'or wherever else [the creditor] may be found.' " *See Lent v. Towery*, 271 Or 41, 46, 530 P2d 77 (1975) (stating principle and quoting 70 CJS 217, Payment § 6).

wait, deliberately, until just before payment was due and, instead of making timely payment, make only a written offer of payment. In that circumstance, plaintiff asserts, the creditor would be forced to act affirmatively to accept the offer or to accept late payment—a burden or consequence that the legislature could not have intended.

In this case, as plaintiff sees it, defendant engaged in precisely that ploy. According to plaintiff, defendant knew, without question, that Henderson's trust account was "a proper place to make the payment." Instead of simply making timely payment there, defendant made a written offer to do so, requiring plaintiff to respond and accept defendant's offer or accept a payment that was two days late.

The answer to the plaintiff's concern is two-fold. First, the legislature enacted ORS 81.010 as a statute of convenience for use in situations in which a debtor has both a good faith uncertainty about whether a creditor will accept the debtor's tendered performance and a present ability to make timely payment. A debtor who acts in bad faith to delay payment does not satisfy the requirements of the statute.

In this case, the trial court found that the collection escrow account that the parties contemplated had not been established by the time payment was due; that plaintiff had previously instructed his attorney, Henderson, not to accept payments from defendant; and that defendant was legitimately uncertain about where to make payment. The trial court also found that defendant had provided the funds necessary for timely payment to defendant's attorney, Anderson, and that Anderson had those funds in his trust account on January 6. Thus, the trial court found facts that established that defendant's written offer was a legitimate effort to determine whether plaintiff would accept payment to Henderson's trust account and not a deliberate effort to evade the contractual requirement of timely payment.

Second, and most importantly, the text and context of ORS 81.010 indicate that the legislature intended to require a creditor who receives a valid offer of payment to accept that offer or have the offer deemed equivalent to actual payment. A creditor who receives a valid written offer of payment is entitled to choose whether or not to accept it. As a general rule, silence does not indicate acceptance of an

offer. *See Suitter v. Thompson et ux.*, 225 Or 614, 623, 358 P2d 267 (1960) (silence functions as acceptance only in limited circumstance where "a duty arises requiring a party to speak"). The same is true of a written offer of payment under ORS 81.010. If a creditor does not affirmatively indicate that he or she accepts an offer of payment, and instead remains silent, the offer is "not accepted." *See Comstock Mfg. Co. v. Schiffmann et al.*, 113 Or 677, 686-87, 234 P 293 (1925) (defendants made no objection to offer of payment, remained quiet until time for payment, then attempted, but were not permitted, forfeiture).

At common law, when a debtor produced the coin of the realm and the creditor did not accept it, the debtor had tendered, but had not completed, performance. The difference between tender and performance was the affirmative act of acceptance. *Bembridge*, 235 Or at 402. If "mere inaction" could constitute acceptance, there would be no difference between tender and performance.

■ When a debtor makes a written offer of payment, the debtor must have a good faith intent to ascertain whether the creditor is willing to accept the performance that is offered. If the creditor agrees to do so, the debtor is required to actually and timely perform and produce the payment. If a creditor's failure to respond were to constitute acceptance of an offer of performance, the statute would cease to be one of "convenience." The debtor would be required to perform despite continued uncertainty that the offered performance would be accepted. For all of those reasons, we conclude that defendant is correct that a creditor's silence in the face of valid offer of payment does not indicate acceptance of that offer.

In summary, on January 6, defendant made, in good faith, a timely written offer to pay the sum of $579.00 to plaintiff. Plaintiff did not reply to or accept that offer. Therefore, under the terms and for the purposes of ORS 81.010, defendant's offer of payment was the equivalent of the actual production of the sum of $579.00 on January 6. Plaintiff was not entitled to foreclose the trust deed, and the trial court was correct in entering judgment for defendant.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.