Argued and submitted January 4, 2013, on appeal, reversed and remanded; on cross-appeal, affirmed January 23, 2014

McDOWELL WELDING & PIPEFITTING, INC.,
an Oregon corporation,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

UNITED STATES GYPSUM COMPANY,
a Delaware corporation;
and BE & K Construction Co., Inc.,
an Alabama corporation,
*Defendants-Respondents*
*Cross-Appellants,*

*and*

PORT OF ST. HELENS,
an Oregon municipal corporation,
*Defendant-Respondent,*

*and*

EC COMPANY,
dba Electrical Construction Co.,
*Defendant.*

Columbia County Circuit Court
012126; A149831

320 P3d 579

Bruce H. Cahn argued the cause for appellant-cross-respondent. With him on the briefs were Aaron D. Goldstein and Ball Janik LLP.

Daniel K. Reising argued the cause for respondents-cross-appellants. With him on the briefs was Fucile & Reising LLP.

No appearance for respondent Port of St. Helens.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Plaintiff, McDowell Welding & Pipefitting, Inc., appeals a supplemental judgment entered by the trial court following a remand from the Oregon Supreme Court for the trial court to determine the amount of prejudgment interest to which plaintiff was entitled. *See McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 290-91, 193 P3d 9 (2008). On appeal, plaintiff contends that the trial court incorrectly ruled that plaintiff was entitled to only one day of prejudgment interest. Defendants BE & K Construction Co., Inc. (BE & K) and United States Gypsum Company (U.S. Gypsum) cross-appeal, asserting that the trial court erred in (1) awarding plaintiff prejudgment interest at the statutory rate; (2) not conditioning the payment of net settlement proceeds to plaintiff on execution of a settlement release; (3) reducing U.S. Gypsum's attorney fee award; and (4) reducing BE & K's attorney fee award. We reject without discussion defendants' contentions on cross-appeal and, on appeal, reverse and remand.

The general background facts, some of which are set forth in the Supreme Court's decision, are as follows. This case arose out of a construction project in Columbia County. U.S. Gypsum was constructing a new plant and hired BE & K as the general contractor on the project. 345 Or at 275. "BE & K subcontracted with plaintiff to perform work on the project. During construction, defendants asked plaintiff to perform additional tasks, over and above plaintiff's contractual obligations, and defendants promised to pay plaintiff for doing so." *Id.* Plaintiff completed its work on the construction project, and a disagreement arose among the parties "over the amount that defendants owed for the additional work that plaintiff had performed." *Id.*

On February 22, 2001, defendants made an oral offer to settle the parties' dispute for $800,000 and plaintiff accepted that offer. "The parties also agreed that, to the extent that plaintiff owed money to its suppliers, defendants would issue joint checks to plaintiff and its suppliers out of the $800,000 payment." *Id.* at 287. As part of those discussions, defendants "asked plaintiff to provide them with the suppliers' names and the amount that plaintiff owed each

supplier so that defendants could prepare the joint checks."
*Id.* One day after the parties reached that agreement, BE & K
sent plaintiff a document, dated February 23, 2001, entitled
"Modification to Subcontract Agreement" (Modification 29).
Modification 29 provides as follows:

"Upon your acceptance hereof, this letter will constitute
a Modification of the Subcontract previously entered into,
dated August 7, 2000.

"In accordance with the provisions of Article III of the
Subcontract Agreement, you are directed to:

"This is a final settlement to [plaintiff] on both con-
tracts at the U.S. Gypsum plant site in Rainier, Oregon
S0063 and S0075. S0063 covers the Auxiliary Package and
S0075 covers the Pipe and Instrumentation Installation.
This is a one time final settlement.

"Increase          $800,000.00

"Accordingly, the price of your Subcontract is hereby
1. [ ] left unchanged, 2. [x] increased, 3. [ ] decreased; by
$800,000. In all other respects, however, your Subcontract
shall be and remain the same.

"If the foregoing Modification is satisfactory to you,
please note your acceptance thereof in the space provided
below on all copies hereof. Please return all signed copies to
us."

After the signature block for BE & K's representative, the
document states "Effective as of the date stated above, the
foregoing Modification is hereby accepted by Subcontractor."
That acceptance clause is followed by a signature block for
plaintiff's representative to complete.

Plaintiff did not sign and return Modification 29.
Instead, approximately one week after the parties reached
their agreement, "plaintiff repudiated the settlement; plaintiff
took the position that the parties' discussions on February 22,
2001, had not resulted in a final, binding agreement." *Id.*

Plaintiff filed this action alleging, among other things,
claims for lien foreclosure and breach of contract. Defendants
filed counterclaims seeking, among other things, specific per-
formance of the settlement agreement. After a bench trial on

the counterclaims, the trial court concluded that there was an enforceable settlement agreement under which plaintiff had agreed to settle its claims in return for defendants' promise to pay $800,000. The trial court entered a limited judgment directing that defendants deposit $800,000 with the clerk of court. However, although plaintiff asserted that defendant should be required to pay prejudgment interest on the $800,000, the "trial court overruled [that] objection." *Id.* at 287. In June 2004, "defendants tendered $800,000 to the court clerk." *Id.* at 277. The trial court later entered a general judgment dismissing plaintiff's claims with prejudice.

As relevant here, before the Supreme Court, plaintiff asserted that the trial court had erred in denying it prejudgment interest. In particular, it argued that "once defendants chose to seek the benefits of the settlement agreement and asked the trial court to order specific performance, the trial court should have conditioned plaintiff's performance of the settlement agreement on defendants' payment of the agreed sum *plus interest*." *Id.* at 288-89 (emphasis added). The Supreme Court agreed, holding that "the trial court should have conditioned its judgment granting specific performance of the settlement agreement on defendants' paying $800,000 plus interest from the date of the agreement." *Id.* at 289-90.

Defendants, however, argued that,

"even if they otherwise would be liable for prejudgment interest, they tendered payment to plaintiff and thus cut off plaintiff's right to seek prejudgment interest. Defendants note that the trial court found that defendants 'were ready, willing and able to perform and plaintiff was denied access to the money because of its wrongful refusal to perform under the terms of the settlement agreement.'"

*Id.* at 290 (citation omitted). The court disagreed. It explained that,

"[t]he trial court's findings do not show that defendants tendered payment to plaintiff. Rather, as the trial court found, the record reflects that the parties entered into a settlement agreement, that defendants requested information that would permit them to issue checks to plaintiff and

its suppliers in the future, and that defendants were pre-pared to do so. The prospect, however, that payment might occur at some point in the future is not sufficient to defeat plaintiff's claim for prejudgment interest."

*Id.* Because it concluded that plaintiff was entitled to pre-judgment interest, the court reversed on that issue and remanded the case to the trial court so that the court could "determine th[e] amount of prejudgment interest owed." *Id.*

On remand, defendants asserted that, "[i]n deter-mining the amount of prejudgment interest owed, the Court must decide both the time that prejudgment interest has accrued and the interest rate to award." With respect to the time over which prejudgment interest had accrued, defen-dants argued that plaintiff was "entitled to only one day of prejudgment interest." In support of that contention, defen-dants pointed out that "the day after the oral [settlement] agreement was reached, BE & K submitted to [plaintiff] a written contract change order or 'Modification' [that is, Modification 29], to increase [plaintiff's] compensation by $800,000." In defendants' view, Modification 29 constituted a tender and, thus, cut off "any further obligation to pay prejudgment interest." *See Bembridge v. Miller*, 235 Or 396, 402-03, 385 P2d 172 (1963) (discussing the effect of tender).

Plaintiff, for its part, asserted on remand that it was entitled to prejudgment interest at the statutory rate "from February 22, 2001 through June 24, 2004." In plain-tiff's view, defendants had not tendered payment until, pur-suant to the court's instruction, defendants deposited the $800,000 with the court clerk. According to plaintiff, "con-trary to the assertion of [d]efendants, the Supreme Court specifically found that BE & K had in fact not tendered funds to [plaintiff]." Furthermore, in any event, "because payment was conditioned on other factors, including joint checks to be issued to subcontractors of [plaintiff], there in fact was no tender made of the $800,000 either in cash or under ORS 81.010."[1]

---

[1] That statute provides:

"An offer in writing to pay a particular sum of money or to deliver a writ-ten instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

The trial court held a hearing on the issue and ultimately agreed with defendants. In a letter opinion, the court "agree[d] with defendants that there was an adequate written tender of the $800,000 and that plaintiff is entitled to only one day's prejudgment interest." The court explained, "This tender was in the form of Modification 29 which increased the contract by $800,000. The Court determines the prejudgment interest to be $197.26."

As noted, on appeal, plaintiff first asserts that the trial court's ruling that Modification 29 constituted a tender is contrary to the Supreme Court's ruling regarding prejudgment interest and, therefore, "the law of the case doctrine prohibits the trial court from revisiting" that issue. With respect to that contention, defendants assert that the Supreme Court's discussion did not relate to Modification 29, and that the court "did not make any ruling with respect to Modification 29 that bound the trial court on remand." Plaintiff also argues that even if the Supreme Court's decision did not resolve the issue, Modification 29 "was not a present unconditional offer to pay [plaintiff] $800,000" and was, therefore, not a tender.[2]

Under the "law of the case" doctrine, a ruling that has been made by an appellate court in a particular case is "binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review." *State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den*, 510 US 969 (1993) (internal quotation marks omitted). The doctrine, thereby, "gives preclusive effect to legal rulings made or sustained in prior appeals in the same litigation." *Fox v. Collins*, 238 Or App 240, 247, 241 P3d 762 (2010), *rev den*, 350 Or 297 (2011) (internal quotation marks omitted). The doctrine "applies to the portions of a prior appellate opinion that were necessary to the

---

[2] We reject without extended discussion defendants' assertion that plaintiff failed to preserve the argument that Modification 29 was not a tender. In response to defendants' contention before the trial court that plaintiff was entitled to only one day of prejudgment interest, plaintiff argued to the trial court that, "because payment was conditioned on other factors, including joint checks to be issued to subcontractors of [plaintiff], there in fact was no tender made of the $800,000, either in cash or under ORS 81.010." That assertion sufficiently preserved plaintiff's argument on appeal that Modification 29 was not a tender.

disposition of the appeal" and "should be invoked to preclude parties from revisiting issues that already have been fully considered by an appellate court in the same proceeding." *Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 53-54, 110 P3d 615, *rev den*, 339 Or 544 (2005) (internal quotation marks omitted).

In this case, as set forth above, the Supreme Court considered the issue of whether defendants "tendered payment to plaintiff and thus cut off plaintiff's right to seek prejudgment interest." *McDowell*, 345 Or at 290. The facts the court considered relating to prejudgment interest were as follows:

> "[O]n February 22, 2001, plaintiff agreed to release its claims against defendants in return for a payment of $800,000. The parties also agreed that, to the extent that plaintiff owed money to its suppliers, defendants would issue joint checks to plaintiff and its suppliers out of the $800,000 payment. Defendants asked plaintiff to provide them with the suppliers' names and the amount that plaintiff owed each supplier so that defendant could prepare the joint checks."

*Id.* at 287. The court noted that the trial court had found that "defendants 'were ready, willing and able to perform'" the agreement. *Id.* at 290. It observed that a tender may occur by the actual production of money or, in the alternative, under ORS 81.010 by a written offer to pay. However, the court concluded that there had not been a tender in this case:

> "The trial court's findings do not show that defendant tendered payment to plaintiff. Rather, as the trial court found, the record reflects that the parties entered into a settlement agreement, that defendants requested information that would permit them to issue checks to plaintiff and its suppliers in the future, and that defendants were prepared to do so. *The prospect, however, that payment might occur at some point in the future is not sufficient to defeat plaintiff's claim for prejudgment interest.*"

*Id.* (emphasis added).

In defendants' view, "[w]hether Modification 29 was a written offer to pay [plaintiff] $800,000 was not litigated

before the Supreme Court and Modification 29 was not mentioned in the Supreme Court's opinion" and, therefore, the law of the case doctrine did not preclude the trial court from concluding that, through Modification 29, defendants tendered payment to plaintiff on February 23, 2001. We note that the issue explicitly addressed in the Supreme Court's decision is plaintiff's *entitlement* to prejudgment interest, as opposed to the appropriate *amount* of such interest.

Nonetheless, in addressing entitlement to prejudgment interest, the Supreme Court directly addressed the question of whether tender had "cut off" plaintiff's entitlement to prejudgment interest. It is hard to imagine that the Supreme Court's analysis, which specifically noted that a tender of money occurs when money is produced and made available or when there is an "'offer *in writing* to pay a particular sum,'" did not pertain at all to Modification 29, the writing that defendants sent to plaintiffs the day after defendants' oral settlement offer. *Id.* at 290 (quoting ORS 81.010) (emphasis added).[3] But even assuming that the Supreme Court has not already rejected defendants' specific argument that Modification 29 constituted a tender, the legal principles that it articulated in its opinion compel the same result. As a matter of law, Modification 29 was insufficient to constitute a tender under ORS 81.010.

As noted, "[t]o constitute a tender of money, * * * the money 'must actually be produced and made available for the acceptance and appropriation of the person to whom it is offered.'" *McDowell*, 345 Or at 290 (quoting *Bembridge*, 235 Or at 402). In the alternative, a written offer to pay a particular sum of money "is, if not accepted, equivalent to the actual production or tender of the money." ORS 81.010; *McDowell*, 345 Or at 290. ORS 81.010 "simply dispenses with the necessity of actually producing and offering money at the outset. It is a statute for convenience." *Malan v. Tipton*,

---

[3] We note that, had the Supreme Court merely been considering whether defendant's *oral* settlement offer of February 22 constituted a tender, it is unclear why the court's analysis would have focused on whether there was merely a "prospect * * * that payment might occur at some point in the future." *McDowell*, 345 Or at 290. Instead, the easy answer would have been that, as observed in the opinion, a tender may be made only by the actual production of money or, under ORS 81.010, by an offer in writing to pay a particular sum and that an oral offer to settle is neither of those things.

349 Or 638, 647, 247 P3d 1223 (2011) (internal quotation marks omitted). In other words, under the statute, a debtor may "substitute a written offer of payment for the production of money." *Id.* In order "to serve the same function as the production of money * * * a written offer of payment must communicate a present offer of timely payment." *Id.* at 648. "The prospect * * * that payment might occur at some point in the future" is not sufficient for a court to conclude that there has been a tender cutting off prejudgment interest. *McDowell*, 345 Or at 290.

By way of example, the Supreme Court applied those principles to two contrasting communications in *Malan* to determine whether the defendant, a debtor, had made a valid written offer of payment pursuant to ORS 81.010. The first communication, a letter sent January 5, 2006, from the defendant's attorney to the plaintiff's attorney, stated as follows:

> "'If the account is established before January 10, 2006[, defendant] will make the payment directly to [the title company]. In the event that the account is not established before January 10th, I have asked my client to mail me a payment (in the old amount) so that I can hold those funds as soon as the account is established, or pay them to your trust account. Alternatively I can instruct my client to tender the payment directly to you before January 10th. In any event, my client intends tendering the January 2006 payment on a timely basis in any way you deem appropriate. Please let me know how you would like to receive that payment, assuming your client is not able to review the collection account agreement, or deliver the note and trust deed on time.'"

*Malan*, 349 Or at 643 (brackets in *Malan*). The court concluded that that letter was not sufficient to constitute a tender: "Although the letter indicated that defendant intended to make timely payment, it did not state that defendant was presently offering to do so." *Id.* at 648.

The second communication, another letter from the defendant's attorney to the plaintiff's attorney, stated as follows:

> "'[Defendant] has deposited the January, 2006 payment in my trust account, in the amount of $579, which *I will pay* either to [the title company] as soon as the collection account is established, or to [the plaintiff's attorney,] Mr. Henderson, if he would like to accept the payment into his trust account in the meantime.'"

*Id.* (first and second brackets in *Malan*; emphasis in *Malan*). The court concluded that that communication, unlike the January 5 letter, was a tender under ORS 81.010: It "communicated, in writing, a present offer to timely pay a particular sum—$579.00—to plaintiff's attorney, Henderson." *Id.*

Here, Modification 29, on its face, was insufficient to communicate a present offer of timely payment (as opposed to communicating intent that payment might occur at some point in the future) and, therefore, as a matter of law, did not constitute a tender. First, it was an offer to modify the parties' existing subcontract; it specifically stated that upon plaintiff's acceptance it would "constitute a Modification of the Subcontract previously entered into." It purported to be "a final settlement to [plaintiff] on both contracts at the U.S. Gypsum plant site in Rainier, Oregon" and explained that the price of the subcontract would be "increased * * * by $800,000." Additionally, by its terms, the modification required plaintiff to note its acceptance by its representative's signature in the signature block and then "return all signed copies" to defendants. Like the first communication discussed in *Malan*, Modification 29 did not state or communicate that defendants were *presently* offering to make *timely* payment. It merely communicated an offer to increase the price of the subcontract by $800,000. That was insufficient to constitute a valid tender under ORS 81.010.[4]

---

[4] Furthermore, even considering Modification 29 in combination with the parties' settlement discussions on February 22, 2001, the result would be the same. On that date, plaintiff agreed to release its claims against defendants in return for a payment of $800,000 and the parties also agreed that defendants would issue joint checks to plaintiff and any suppliers to whom plaintiff owed money out of that $800,000. Defendants asked plaintiff to provide them with the suppliers' names and the amount that plaintiff owed each supplier so that defendant could prepare the joint checks. As the Supreme Court observed, although at that point, the parties had entered into a settlement agreement, defendants had requested information that would permit them to issue checks to plaintiff and its suppliers in the future, and defendants were prepared to do so, that amounted only to a "prospect * * * that payment might occur at some point in the future." *McDowell*, 345 Or at 290. Modification 29's written offer to modify the subcontract

Based on the foregoing, the trial court erred in concluding that Modification 29 was an adequate written tender of the $800,000, and that plaintiff was entitled to only one day's prejudgment interest.

On appeal, reversed and remanded; on cross-appeal, affirmed.

---

to provide for the additional $800,000 payment to which the parties had agreed (which, on its face, is not a present offer of timely payment) did not transform the circumstances; rather, along with the other existing circumstances, it still amounts only to an offer to make payment at some point in the future.