136 Nev., Advance Opinion 6

IN THE SUPREME COURT OF THE STATE OF NEVADA

7510 PERLA DEL MAR AVE TRUST,
Appellant,
vs.
BANK OF AMERICA, N.A.,
Respondent.

No. 75603

**FILED**

FEB 2 7 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK



Appeal from a district court judgment following a bench trial in a quiet title action. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

*Affirmed.*

Law Offices of Michael F. Bohn, Esq., Ltd., and Michael F. Bohn, for Appellant.

Akerman, LLP, and Ariel E. Stern and Jared M. Sechrist, Las Vegas, for Respondent.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 743, 334 P.3d 408, 409 (2014), this court held that NRS 116.3116(2) provides a homeowners' association (HOA) with a superpriority lien that, when properly foreclosed upon, extinguishes a first deed of trust. This court subsequently held in *Bank of America, N.A. v. SFR Investments Pool 1, LLC*, 134 Nev. 604, 605, 427 P.3d 113, 116 (2018), that a deed of trust beneficiary

20-07838

can preserve its deed of trust by tendering the superpriority portion of the HOA's lien before the foreclosure sale is held.

In this appeal, we conclude that an offer to pay the superpriority amount in the future, once that amount is determined, does not constitute a tender sufficient to preserve the first deed of trust under *Bank of America*. We further conclude, however, that formal tender is excused when evidence shows that the party entitled to payment had a known policy of rejecting such payments. In light of these conclusions, we consider whether substantial evidence exists to support the district court's finding that the beneficiary's agent was excused from making a formal tender, such that under *Bank of America*, the ensuing foreclosure sale did not extinguish the first deed of trust. We conclude that substantial evidence supports this finding, and we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

This dispute involves a residence located within two HOAs, Mandolin Phase 3 at Mountain's Edge (Mandolin) and Mountain's Edge Master Association. The property was subject to the Covenants, Conditions, and Restrictions (CC&Rs) of both HOAs. In 2010, the original owner of the residence obtained a loan secured by a deed of trust on the property; that loan was eventually assigned to respondent Bank of America, N.A. (the Bank). By 2012, the original homeowner had become delinquent on his monthly HOA assessments and Nevada Association Services (NAS), Mandolin's agent, began foreclosure proceedings by recording first a lien for delinquent assessments and then a notice of default and election to sell. Thereafter, NAS sent the notice of default and election to sell to the Bank, the original homeowner, and other interested parties. In response, the Bank, through its counsel Miles, Bauer, Bergstorm & Winters, LLP (Miles

Bauer), contacted NAS via letter dated March 16, 2012, regarding payment of Mandolin's superpriority lien. Specifically, Rock Jung, an attorney for Miles Bauer, requested that NAS identify the superpriority portion of the lien—i.e., the amount the Bank may rightfully pay to preserve its deed of trust—and offered to pay that sum upon proof of the same. NAS received the letter but did not respond to it. Instead, NAS, on behalf of Mandolin, proceeded with the foreclosure sale and sold the property to appellant 7510 Perla Del Mar Ave Trust (Perla Trust) in February 2013 for $14,600.

In September 2013, Perla Trust instituted the underlying quiet title action and sought a declaration that it rightfully holds title to the property and that the foreclosure sale extinguished the Bank's deed of trust. The Bank responded, seeking a determination that its deed of trust survived the foreclosure sale. The district court held a two-day bench trial in February 2018. As relevant here, the district court heard testimony concerning Miles Bauer's practice of contacting NAS to satisfy any superpriority lien obligation and the evolution of NAS's business policy regarding its responses to Miles Bauer and its treatment of any tendered payment.

Jung testified that by the time he sent the letter to NAS in the instant action, he had already sent around 1,000 nearly identical letters to NAS inquiring about HOA common assessment amounts owed on other properties in order to calculate the superpriority portion of the lien on those properties. Jung and Chris Yergensen, former in-house counsel for NAS, testified that from the time Miles Bauer began sending requests for payoff information until late 2011 or early 2012, NAS responded with a payoff ledger form that provided a breakdown of fees and assessments. Yergensen and Jung further testified that NAS then changed its policy to not respond

to Miles Bauer absent the homeowner's written authorization, citing concerns of violating the Fair Debt Collection Practices Act (FDCPA), and that Miles Bauer was aware of this policy. Yergensen testified that sometime around July 2013 NAS again changed its policy to provide the payoff amount to the first deed of trust holder for a $150 fee, relying on a change in state law.

Evidence further established that Jung sent the letter requesting a payoff amount for the Mandolin superpriority lien to NAS in March 2012. NAS did not provide payoff ledgers at that time or otherwise respond to the letter. Moreover, Yergensen testified that NAS's policy would be to have its receptionist reject any check for less than the full lien amount if it was accompanied by a condition. Jung and Susan Moses, custodian of records and paralegal for NAS, both testified to the fact that NAS systematically rejected checks if it was for less than the entirety of the lien amount.

Following the bench trial, the district court ruled in favor of the Bank and held that the Miles Bauer letter, sent on behalf of the Bank, redeemed the superpriority portion of the lien as a matter of law. In the alternative, the district court held "that payment of the super-priority would have been futile because that payment would have been rejected." To reach this result, the district court considered the trial testimony and evidence and observed "that Miles Bauer was ready, willing and able to pay the superpriority portion of the lien as well as additional fees and costs." The district court further observed that NAS understood that Miles Bauer required the payoff ledger to issue a check for its obligation, but that NAS nevertheless "had an ordinary course of business of rejecting payments from Miles Bauer if the payments were only for the superpriority component."

Relatedly, the district court rejected NAS's position that the FDCPA prevented NAS from responding to Miles Bauer's request for payoff information and concluded that "[i]t was just an excuse to be able to go forward with the foreclosure sale." Thus, the district court determined that Mandolin foreclosed on only the subpriority portion of its lien and that Perla Trust purchased the property subject to the Bank's first deed of trust.[1]

Thereafter, Perla Trust appealed.[2] We review the district court's factual findings for substantial evidence and its legal conclusions de novo. *Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012).

## DISCUSSION

Perla Trust maintains that the district court erred by finding that Miles Bauer's letter offering to pay the yet-to-be-determined superpriority portion of the HOA lien constituted valid tender, preserving the Bank's first deed of trust. As an initial matter, we agree with Perla Trust, as it is the generally accepted rule that a promise to make a payment at a later date or once a certain condition has been satisfied cannot

---

[1]The district court also considered whether principles of equity required setting aside the foreclosure sale. The district court did not grant the Bank equitable relief; instead, it determined that Perla Trust took title to the property subject to the Bank's deed of trust because the superpriority tender, or rather the excuse thereof, cured the default as to that portion of Mandolin's lien by operation of law. *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 612-13, 427 P.3d 113, 121 (2018) (recognizing that the legal effect of a superpriority tender is that the HOA sale purchaser takes title subject to the first deed of trust). Because we conclude that the Bank's obligation to tender was excused, we do not address the Bank's alternative argument that the sale should be set aside on equitable grounds.

[2]This case was originally routed to the court of appeals, which reversed and remanded. The Bank then petitioned for review of the decision under NRAP 40(B)(a), which we granted.

constitute a valid tender. *See Southfork Invs. Grp., Inc. v. Williams*, 706 So. 2d 75, 79 (Fla. Dist. Ct. App. 1998) ("To make an effective tender, the debtor must actually attempt to pay the sums due; mere offers to pay, or declarations that the debtor is willing to pay, are not enough."); *Cochran v. Griffith Energy Serv., Inc.*, 993 A.2d 153, 166 (Md. Ct. Spec. App. 2010) ("A tender is an offer to perform a condition or obligation, coupled with the present ability of immediate performance, so that if it were not for the refusal of cooperation by the party to whom tender is made, the condition or obligation *would be immediately satisfied*." (emphasis added) (internal quotation marks omitted)); *Graff v. Burnett*, 414 N.W.2d 271, 276 (Neb. 1987) ("To determine whether a proper tender of payment has been made, we have stated that a tender is more than a mere offer to pay. A tender of payment is an offer to perform, coupled with the present ability of immediate performance, which, were it not for the refusal of cooperation by the party to whom tender is made, *would immediately satisfy* the condition or obligation for which the tender is made." (emphasis added)); *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 320 P.3d 579, 585 (Or. Ct. App. 2014) ("In order to serve the same function as the production of money[,] . . . a written offer of payment must communicate a present offer of timely payment. The prospect . . . that payment might occur at some point in the future is not sufficient for a court to conclude that there has been a tender . . . ." (citation and internal quotation marks omitted)); *cf.* 74 Am. Jur. 2d *Tender* § 1 (2012) (recognizing the general rule that an offer to pay without actual payment is not a valid tender); 86 C.J.S. *Tender* § 24 (2017) (same). Accordingly, we conclude that the district court erred in determining that Miles Bauer's offer to pay the yet-to-be-determined superpriority constituted a valid tender.

 

The Bank contends that should we conclude Miles Bauer's letter was insufficient to constitute a valid tender, the Bank's obligation to tender the superpriority amount was nevertheless excused because NAS would have rejected the check. Because NAS had a known policy of rejecting any payment for less than the full lien amount, the district court determined that the Bank's obligation to tender the superpriority portion of the lien was excused, as it would have been rejected. We agree with the Bank and the district court, as this is a generally accepted exception to the above-mentioned rule. *See Schmitt v. Sapp*, 223 P.2d 403, 406-07 (Ariz. 1950) ("An actual tender is unnecessary where it is apparent the other party will not accept it. The law does not require one to do a vain and futile thing." (citation omitted)); *Mark Turner Props., Inc. v. Evans*, 554 S.E.2d 492, 495 (Ga. 2001) ("Tender of an amount due is waived when the party entitled to payment, by declaration *or by conduct,* proclaims that, if tender of the amount due is made, an acceptance of it will be refused." (alteration and internal quotation marks omitted)); *Chiles, Heider & Co. v. Pawnee Meadows, Inc.*, 350 N.W.2d 1, 5 (Neb. 1984) ("A formal tender is not necessary where a party has shown by act or word that it would not be accepted if made." (internal quotation marks omitted)); *Alfrey v. Richardson*, 231 P.2d 363, 368 (Okla. 1951) (stating that tender was waived where it was clear that "if a strict legal tender had been made, defendant would not have accepted the money"); *Shields v. Harris*, 934 P.2d 653, 655 (Utah Ct. App. 1997) ("If a demand for a larger sum is so made that it amounts to an announcement that it is useless to tender a smaller sum, it dispenses with the tender requirement." (internal quotation marks omitted)); *see also* 74 Am. Jur. 2d *Tender* § 4 (2012) ("A tender of an amount due is waived when the party entitled to payment, by declaration or by

conduct, proclaims that, if tender of the amount due is made, it will not be accepted."); 86 C.J.S. *Tender* § 5 (2017) (same).

Because the evidence at trial established that at the time relevant to this action, it was NAS's business policy to have its receptionist reject any check for less than the full lien amount, and because the evidence further established that Miles Bauer and the Bank had knowledge of this business practice, we conclude that substantial evidence supports the district court's finding that even if Miles Bauer had tendered a check for the superpriority amount, it would have been rejected.[3] *See Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008) ("Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion."). At trial, Yergensen, Jung, and Moses all provided testimony that NAS had a known business practice to systematically reject any check tendered for less than the full lien amount.[4] *See Jenkins v. Equip.*

---

[3]In this case, we do not reach the question of whether tender is excused when a person entitled to payment of HOA assessments fails to provide statutorily required notice of the amount due under NRS 116.31162(1)(b)(2)(I) (detailing that the HOA must provide "[t]he amount of the association's lien that is prior to the first security interest on the unit pursuant to subsection 3 of NRS 116.3116 as of the date of the notice" in a notice of default and election to sell and record the same with the county recorder).

[4]On appeal, Perla Trust argues that Miles Bauer's letter was not an unconditional offer because it required NAS to submit to Miles Bauer's reading of NRS 116.3116 (2012) to calculate the superpriority portion of the lien. We previously rejected a similar argument in favor of the plain language of NRS 116.3116(2) (2012), and we likewise reject Perla Trust's characterization of Miles Bauer's letter as impermissibly conditional. *See Bank of Am.*, 134 Nev. at 606, 427 P.3d at 117 (explaining that "[a] plain reading of [NRS 116.3116(2) (2012)] indicates that the superpriority portion

*Ctr., Inc.*, 869 P.2d 1000, 1003 (Utah Ct. App. 1994) (explaining that tender is excused "where the lienor claims a larger sum than he or she is entitled to collect"). As a result, the Bank was excused from making a formal tender in this instance because, pursuant to NAS's known policy, even if the Bank had tendered a check for the superpriority portion of the lien, NAS would have rejected it. Thus, we conclude that the district court properly determined that the Bank preserved its interest in the property such that Perla Trust purchased the property subject to the Bank's first deed of trust. Accordingly, we affirm the district court's judgment.

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

---

of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments").