Argued and submitted March 31, on appeal, affirmed in part, reversed and remanded in part, and vacated in part; affirmed on cross-appeal July 26, 1995

Bruce W. STEELE,
*Respondent - Cross-Appellant,*

*v.*

A & B AUTOMOTIVE & TOWING
SERVICE, INC.,
*Appellant - Cross-Respondent.*

(92C773194; CA A82130)

899 P2d 1206

Terrance J. Slominski argued the cause and filed the briefs for appellant - cross-respondent.

Vincent J. Bernabei argued the cause and filed the brief for respondent - cross-appellant.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals, and plaintiff cross-appeals, from a judgment awarding plaintiff $2,500 for breach of contract and negligence, and $8,000 in attorney fees pursuant to ORS 20.080. We affirm in part and reverse in part on the appeal, and affirm on the cross-appeal.

In August 1992, at the request of the Portland police, defendant towing company towed plaintiff's truck from the scene of an accident to one of its automobile storage facilities. Plaintiff never attempted to redeem his truck, but did visit the storage facility several weeks after the accident to retrieve his tools, which had been inside the truck at the time of the accident. There, he discovered that some of the tools had disappeared.

Plaintiff demanded that defendant pay for the missing tools. Defendant denied that any personal property had been taken from the truck without plaintiff's permission and knowledge, but offered "as full settlement of [plaintiff's] claim, $1,034, which represents the outstanding balance owed to [defendant] for towing and storage charges to date." On receiving defendant's response, plaintiff's attorney advised him to telephone defendant and ask for an invoice showing what he owed. He did so, and defendant eventually sent an invoice reflecting $1,034 in towing and storage charges.

Plaintiff filed an action, seeking $3,468.84 for the loss of his tools and attorney fees under ORS 20.080. Defendant counterclaimed, seeking $1,244 in accrued towing and storage charges, as well as attorney fees. Plaintiff subsequently amended his complaint to allege an additional claim for violation of the Unfair Debt Collection Practices Act (UDCPA), ORS 646.639, on the theory that, by sending an invoice reflecting towing and storage charges and counterclaiming for such charges, defendant attempted to "enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist." ORS 646.639(2)(k). Plaintiff sought $1,300 in compensatory damages and $25,000 in punitive damages under the UDCPA. ORS 646.641.

At trial, defendant moved for directed verdicts against all three of plaintiff's claims, and plaintiff moved for a

directed verdict against defendant's counterclaim. The trial court granted directed verdicts against plaintiff's UDCPA claim and against defendant's counterclaim for nonpayment of towing and storage charges, but submitted plaintiff's negligence and breach of contract claims to the jury. The jury returned a verdict awarding plaintiff $2,500, and plaintiff subsequently filed a cost bill that included attorney fees. Over defendant's objections, the trial court awarded $8,000 in attorney fees.

Defendant appeals, assigning error to: (1) the trial court's allowance of attorney fees; (2) the court's granting of a directed verdict against defendant's counterclaim for unpaid towing and storage fees; and (3) the court's denial of defendant's motions for directed verdicts against plaintiff's negligence and breach of bailment contract claims. Plaintiff cross-appeals, assigning error to the trial court's allowance of a directed verdict against his UDCPA claim.

■ Defendant first argues that the trial court erred in awarding attorney fees pursuant to ORS 20.080. That statute provides, in part:

> "In any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $4,000 or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant not less than 10 days before the commencement of the action or the filing of a formal complaint under ORS 46.465(3) or not more than 10 days after the transfer of the action under ORS 46.461."

Defendant contends, based on *Johnson v. White*, 249 Or 461, 439 P2d 8 (1968), that ORS 20.080 cannot support an award of attorney fees to plaintiff, because the total amount pleaded in plaintiff's *complaint*, $29,768,84,[1] exceeded the statute's $4,000 limit.

---

[1] Plaintiff sought $3,468.84 on the breach of contract and negligence claims, plus $1,300 compensatory damages and $25,000 punitive damages on the UDCPA claim.

In *Johnson*, the plaintiff asserted, in a single action, two separate claims, both of which arose from the same tortious act. The first alleged personal injury and sought damages of $5,699.20, and the second alleged property damage and sought damages of $379. After the jury returned a verdict for plaintiff on his second claim, defendant sought attorney fees under ORS 20.080, which then provided a $1,000, rather than $4,000, limit. The trial court denied fees, and the Supreme Court affirmed:

> "If the total demand, regardless of the number of causes of action, is $1000 or less, attorney fees are allowable on each cause of action if plaintiff recovers and other requirements are met. If the total demand is over $1000 attorney fees may not be allowed under any cause of action." 249 Or at 464.

Plaintiff contends that that statement from *Johnson*, although broad, is not controlling because *Johnson* involved separate claims for personal injury and property damage arising out of the same tortious act, whereas this case involves two property damage claims arising out of a single tortious act, and a third, entirely unrelated claim — *i.e.*, the UDCPA claim — arising out of an entirely different set of operative facts. In particular, plaintiff argues, *Johnson* did not consider, much less resolve, whether causes of action arising out of different operative facts should be aggregated for purposes of the $4,000 cap of ORS 20.080. Plaintiff further argues that such aggregation would be artificial and impractical as encouraging a multiplicity of lawsuits. Plaintiff reasons, for example, that he could have filed his UDCPA claim in a separate lawsuit and that, if all claims, however unrelated, are to be aggregated under ORS 20.080, future plaintiffs will simply forgo permissive joinder and file multiple suits.

We agree with plaintiff that *Johnson* did not explicitly address the propriety of aggregating claims arising from different operative facts. Nonetheless, we believe that *Johnson* controls that issue. Nothing in *Johnson* either implicitly or explicitly limits its holding to claims that arise from the same transaction. The plain "total demand" language of its holding does not admit to such a limitation. Nor does the fact that plaintiff could have brought his UDCPA claim in a separate action distinguish this case from *Johnson*, because

the claims at issue in *Johnson* could also have been brought separately, at least at the time when that case was decided. *See Andrews v. Christenson*, 71 Or App 442, 692 P2d 687 (1984), *rev den* 299 Or 37 (1985), *overruled* by *Peterson v. Temple*, 130 Or App 337, 881 P2d 833 (1994), *rev allowed* 320 Or 567 (1995) (describing historical reasons for allowing plaintiff to bring property damage and personal injury claims separately against the same defendant). Indeed, *Johnson* acknowledged and rejected that "policy" argument:

> "The fact that the wording of the statute may cause a multiplicity of actions to be filed in some * * * cases * * * may be a reason for further amendment of the statute. But, that is of legislative, not judicial, concern." 249 Or at 464.

■ Still, *Johnson* did not resolve a final, potentially dispositive issue: Regardless of whether plaintiff's UDCPA claim arose from different operative facts than his bailment-related claims, is that claim a claim "for an injury or wrong to the person or property" for purposes of ORS 20.080?[2]

Plaintiff's UDCPA claim was filed pursuant to ORS 646.641(1):

> "Any *person injured* as a result of willful use or employment by another person of an unlawful collection practice may bring an action in an appropriate court to enjoin the practice or to recover actual damages or $200, whichever is greater." (Emphasis supplied.)

Plaintiff alleged that defendant's demand, and ensuing counterclaim, for towing and storage fees violated the UDCPA, and that he had been injured by that violation in that he had incurred legal expenses to defend against defendant's action.

We conclude that plaintiff's UDCPA claim is a claim for "damages for an injury or wrong to the person or property or both" within the meaning of ORS 20.080. Our conclusion

---

[2] *Johnson* also did not address the more general concern of whether, when a single complaint alleges both claims "for an injury or wrong to the person or property" and claims not pertaining to such injury, the latter are to be aggregated with the former. For example, if two parties have a $25,000 dispute over a sales contract and one assaults the other causing damages of $3,000, must the breach of contract claim be combined with the assault claim, thereby precluding an award of fees on the assault claim? Because of our conclusion, *post*, that plaintiff's UDCPA claim is a claim "for an injury or wrong to the person or property," we need not, and do not, resolve that issue.

derives, primarily, from three sources. First, ORS 646.641(1) describes the availability of a private remedy for UDCPA violations ("any person injured * * * may bring an action * * * to recover actual damages") in terms similar to those that ORS 20.080 uses to describe the availability of attorney fees ("claim[s] for damages for injury or wrong to the person or property").

Second, ORS 20.080 pertains primarily, although not necessarily exclusively, to claims involving "tort-like" injury. *Farmer v. George*, 80 Or App 120, 720 P2d 1328 (1986) (phrase "wrongs to person or property" in ORS 20.080 encompasses all tort claims involving small sums). *Accord Barnes v. Lackner*, 93 Or App 439, 442, 762 P2d 1043 (1988) (although "injuries to persons or property are *generally* caused by torts," ORS 20.080 applied to claims for breach of bailment contract, alleging injury to property) (emphasis in original). Plaintiffs suing under ORS 646.641 *et seq* may recover damages for a variety of tort-like injuries to person or property, including emotional distress, *Creditors Protective Assoc. v. Britt*, 58 Or App 230, 648 P2d 414 (1982), and pecuniary losses, *Bennett v. Reliable Credit Assn., Inc.*, 125 Or App 531, 865 P2d 496 (1993).

Finally, and by way of analogy, this court has applied ORS 20.080 to claims brought under the Unfair Trade Practices Act, ORS 646.605 *et seq. See Barnes v. Bob Godfrey Pontiac, Inc.*, 41 Or App 263, 597 P2d 1285, *mod* 41 Or App 745, 597 P2d 1285, *rev den* 288 Or 81 (1979). The UDCPA was patterned after the Unfair Trade Practices Act, *Creditors Protective Assoc.*, 58 Or App at 232, and we perceive no persuasive reason for treating the former differently for purposes of ORS 20.080.

We conclude, accordingly, that plaintiff's UDCPA claim is a "claim for damages for injury or wrong to the person or property" and must be aggregated with plaintiff's other claims for purposes of ORS 20.080's pleading cap. Because the total amount sought in plaintiff's three claims exceeded the $4,000 limit, the trial court erred in granting plaintiff attorney fees.

■ Defendant next assigns error to the trial court's decision to direct a verdict for plaintiff on defendant's counterclaim for storage and towing charges. That ruling was based on the trial court's interpretation of a provision in defendant's towing contract with the City of Portland which, the parties agree, governed the towing transaction:

> "If the owner does not redeem the vehicle, such person shall have no liability for towing or storage charges beyond the forfeiture of such person's interest in the vehicle. Contractor's sole remedy for such charges shall be to hold the vehicle until all charges against the vehicle have been paid and, if not paid within the time set by law for redemption, to foreclose Contractor's lien against the vehicle. *This provision shall not apply to vehicles towed or services rendered at the request of the owner or other person in lawful possession of the vehicle, including any private preference tow.*" (Emphasis supplied.)

In the trial court's view, that provision limited defendant's remedies against plaintiff to lien foreclosure, unless it could show that its tow of plaintiff's vehicle was a "private preference tow."[3] Because defendant had stipulated that its tow of plaintiff's vehicle was a "private *non*-preference tow,"[4] the court concluded that the contractual restriction on remedies precluded defendant from recovering towing and storage charges.

Defendant asserts, and we agree, that the trial court interpreted the above provision incorrectly.[5] Under the provision's plain language, private preference tows are merely a subset of the tows that are excepted from the limitation on remedies. The operative exception is, in fact, much broader; "vehicles towed * * * at the request of the owner." Thus, to maintain a counterclaim for storage and towing charges, defendant was only required to show that plaintiff requested

---

[3] Under the contract, a "private preference tow" occurs "when the person in charge of the vehicle in need of a tow or road service has indicated a preference as to which company or organization should provide the service."

[4] The contract defines a private nonpreference tow as "a tow of any vehicle other than a Police, Penalty, City, Abandoned Vehicle, Police Retow, Tag Warrant, or Private Preference tow."

[5] Although plaintiff argues that defendant should be held to its admission made at trial that the court's interpretation was correct, we find, after examining that alleged admission in context, that it was not an admission at all.

a tow, and not that he specifically requested the services of defendant tow company.

Defendant did, in fact, present evidence that plaintiff requested the tow. In particular, although there was evidence that the direct request for the tow came from the Portland Police Department, there was also evidence from which the jury could have found that the police acted at plaintiff's instigation. Thus, the trial court erred in directing a verdict for plaintiff on defendant's counterclaim.

Defendant assigns error, finally, to the court's denial of its motions for directed verdicts against plaintiff's breach of contract and negligence claims. We have considered, and reject, that assignment without further discussion.

■     On cross-appeal, plaintiff raises a single assignment of error, that the trial court erred in directing a verdict against his UDCPA claim. In that claim, plaintiff alleged that defendant violated ORS 646.639(2)(k) by sending him an invoice for storage and towing charges and by filing a counterclaim for those charges.

ORS 646.639(2)(k) provides:

"It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(k)     Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take."

Plaintiff argues that the court erred because there was sufficient evidence to create a jury question on every element necessary to establish such a claim. Defendant counters that the directed verdict was proper because the conduct upon which plaintiff bases his UDCPA claim — sending plaintiff an invoice for storage and towing charges and filing a counterclaim to collect those charges[6] — is not the kind of conduct that that statute regulates. We agree with defendant.

---

[6] Plaintiff conceded, before the trial court, that sending an invoice for towing and storage charges would probably not be a UCDPA violation:

"THE COURT:  * * * I'm a little bit uncomfortable with a person who gets legal advice to go seek information and then that information is now being used

In *Porter v. Hill*, 314 Or 86, 838 P2d 45 (1992), the plaintiff filed an action claiming that the defendant owed him some $26,000 for legal services rendered, but later, after examining his records, acknowledged that he had agreed to perform some of the services on a contingent fee basis, and amended his complaint to allege that the defendant owed $3,112. The defendant counterclaimed, alleging, among other things, that the plaintiff had violated ORS 646.639(2)(k) by filing an action for $26,000, knowing or having reason to know that a portion of that debt did not exist. The trial court dismissed that claim, and the defendant appealed.

The Supreme Court concluded that filing a civil action to collect an alleged debt, even when all or part of the alleged debt does not exist, was not the kind of conduct that ORS 646.639(2)(k) proscribed. After examining paragraph (2)(k) in context, the court concluded that the legislature's overall concern in enacting the UCDPA was with the coercive or abusive *methods* often employed to enforce debts, and not with whether the alleged debts actually *exist*. *Porter*, 314 Or at 92. Thus, although portions of the statute prohibit pressuring a debtor by threat of legal action, or using any form of communication that simulates legal or judicial process,

"no paragraph suggests that *actually* filing a legal action is prohibited. That is because filing a legal action resolves issues surrounding the debt in a proper manner, not duplicitously or coercively." *Id.* at 94.

The same principle applies here. Regardless of the existence or validity of the debt alleged, defendant did nothing "duplicitous or coercive" in responding to plaintiff's request for an invoice for the disputed services, or in filing a legal action to determine whether plaintiff is, in fact, liable for the disputed debt. Thus, as a matter of law, defendant's conduct, as alleged, did not violate the UDCPA. The trial court did not err in granting defendant's motion for a directed verdict against the UDCPA claim.

---

against the person seeking, i.e., the invoice, and it seems to me that we need to be able to allow people to fully seek the advice of lawyers and allow lawyers to communicate with each other directly or through clients without a lot of jeopardy.

"[PLAINTIFF'S COUNSEL]: Well, I agree with you. I don't think the invoice is really that significant. The more concern that I have is with the actual filing of the counterclaim[.]"

On appeal, judgment for breach of contract and negligence affirmed, judgment on counterclaim for storage and storage charges reversed and remanded, award of attorney fees to plaintiff vacated; affirmed on cross-appeal.