No. 5     January 4, 2024     61

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Timothy FROST,
*Plaintiff-Appellant,*

*v.*

Justin JACOBS,
Defendant-Respondent.

Grant County Circuit Court
19CV12847; A178680

Robert S. Raschio, Judge.

Argued and submitted October 11, 2023.

D. Rahn Hostetter argued the cause for appellant. On the briefs were Benjamin Boyd, D. Zachary Hostetter, and Hostetter Law Group, LLP.

Leslie A. Kocher-Moar argued the cause for respondent. Also on the brief was MacMillan, Scholz & Marks, LLC.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed and remanded.

## AOYAGI, P. J.

This appeal pertains solely to attorney fees under ORS 20.080. After an altercation, plaintiff and defendant each filed a civil action against the other, which were eventually consolidated and tried together. In plaintiff's action, plaintiff sought $10,000 for battery. In defendant's action, defendant sought $47,000 for assault and battery, and plaintiff counterclaimed for $40,000 for malicious prosecution. The jury found for plaintiff in plaintiff's action, awarding $1,087; it rejected both defendant's claim and plaintiff's counterclaim in defendant's action. Plaintiff requested attorney fees and costs in his action under ORS 20.080(1), which provides for a mandatory fee award to the prevailing plaintiff in tort actions "where the amount pleaded is $10,000 or less." The court denied the request, essentially treating the consolidated cases as a single action in which plaintiff sought more than the statutory limit. On appeal, plaintiff challenges the court's ruling as it pertains to (1) attorney fees, (2) the prevailing party fee, and (3) costs.

We agree with plaintiff that the trial court erred. Although the court was understandably concerned about claim splitting, aggregating plaintiff's pleaded damages in the two actions for purposes of ORS 20.080 was not a permissible way to address that issue. Separate actions must be treated as separate, even when consolidated, for purposes of ORS 20.080. Plaintiff's action for $10,000 was therefore within the statutory limit. Further, although defendant made a pretrial offer in an amount greater than the jury awarded, which would normally cut off plaintiff's right to fees, the offer was ineffective as a tender due to how it was written, so the trial court's alternative basis for denying fees was unsound. Accordingly, we reverse and remand for the trial court to award attorney fees to plaintiff. Because the court's rulings on costs and the prevailing party fee were derivative of its fee ruling, we do not address those issues separately, instead leaving it to the court to address costs and the prevailing party fee anew on remand.

## I. FACTS

Plaintiff and defendant had an altercation regarding the end of a lease of agricultural land. Defendant made a police report, which led to plaintiff's arrest. A grand jury

dismissed the charges against plaintiff. After the charges were dismissed, plaintiff sent a letter to defendant, in which he asserted a battery claim, demanded $10,000, and referred to ORS 20.080. Around the same time, plaintiff separately sent a similar letter to defendant's wife, Jenny Jacobs, asserting a claim against her for false arrest. Defendant and Jacobs notified their insurance company of the claims, and their insurance agent emailed the following offer to plaintiff:

> "In response to the ORS 20.080 demand regarding the claim of Timothy Frost, I have made a settlement offer regarding the claim to Justin Jacobs in the amount of $5100 inclusive of all issues and the claim of Jenni Jacobs in the amount of $1086.00 inclusive of all issues. If our offer is acceptable, I will send to you the release of all claims."

Plaintiff rejected that offer.

Plaintiff filed an action for battery against defendant, seeking $10,000 in damages. We refer to that action, case number 19CV12847, as "plaintiff's action."

Defendant subsequently filed his own separate action for assault and battery against plaintiff, seeking $47,000 in damages.[1] We refer to that action, case number 19CV24003, as "defendant's action." Plaintiff moved to dismiss defendant's action under ORCP 21 A(1)(c), which provides for dismissal when "there is another action pending between the same parties for the same cause."[2] Defendant opposed the motion, and the court denied it. Defendant then moved to consolidate the two actions. The court granted that motion over plaintiff's opposition. The cases were thus consolidated for pretrial proceedings and trial. A month later, plaintiff filed his answer, including asserting a

---

[1] Defendant also asserted claims against a second person, LaVelle Holmes. Those claims (and her counterclaims) are not at issue, so we omit them from our discussion.

[2] ORCP 21 A was reorganized effective January 1, 2022, and we use the current numbering for ease of reference. *See* Council on Court Procedures, Amendments to the Oregon Rules of Civil Procedure, Dec 12, 2020 (effective Jan 1, 2022). The relevant text is unchanged. *See* Council on Court Procedures, Staff Comment to Rule 21, *available at* https://counciloncourtprocedures.org/ Content/Legislative_History_of_Rules/ORCP_21_promulgations_all_years.pdf (accessed Dec 15, 2023) (stating that the amendments to ORCP 21 A "are not meant to affect the meaning or operation of the section").

counterclaim against defendant for malicious prosecution, seeking $40,000 in damages.

All of the claims were tried to a jury in a single trial of the consolidated cases. In plaintiff's action, the jury found for plaintiff on his battery claim and awarded $1,087 in damages. In defendant's action, the jury rejected both defendant's claims (assault and battery) and plaintiff's counterclaim (malicious prosecution). The court entered a general judgment in each case reflecting the jury's verdicts.

Relying on ORS 20.080(1), plaintiff filed a request for attorney fees, costs, and a prevailing party fee in plaintiff's action. The court denied the request. The court reasoned that, to avoid claim splitting, plaintiff's battery claim (in plaintiff's action) and malicious prosecution counterclaim (in defendant's action) should be treated as claims in a single action, which meant that plaintiff's pleaded damages—$10,000 for battery and $40,000 for malicious prosecution—exceeded the statutory limit. That is, the court construed ORS 20.080(1) as allowing it to aggregate plaintiff's pleaded damages in the two actions, because, it reasoned, the claims arose from a single transaction or series of transactions, such that the doctrine of claim preclusion applied. Plaintiff moved for reconsideration. On reconsideration, the court reaffirmed the stated ruling, as well as clarifying that it had also rejected plaintiff's request on a second basis, which was defendant's pretrial tender of a settlement offer greater than the jury verdict.[3]

The court entered a supplemental judgment in plaintiff's action, denying plaintiff's request for attorney fees and costs, and providing for no cost award or prevailing party fee to either party. Plaintiff appeals the supplemental judgment.

## II.  ANALYSIS

Plaintiff contends that the trial court erred in denying him attorney fees under ORS 20.080(1). That statute provides for an award of attorney fees to the prevailing plaintiff

---

[3] The parties had fully briefed and argued both the claim-splitting issue and the tender issue before the trial court made its fee ruling. The parties agree that the tender issue is properly before us and should be treated as an alternative basis for the court's denial of fees.

in a tort action where the pleaded damages are $10,000 or less, subject to a demand requirement and a tender provision. As relevant here, ORS 20.080(1) states:

> "In *any action* for damages for an injury or wrong to the person or property, or both, of another *where the amount pleaded is $10,000 or less*, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant, and on the defendant's insurer, if known to the plaintiff, not less than 30 days before the commencement of the action ***. However, no attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action ***, an amount not less than the damages awarded to the plaintiff."

(Emphases added.)

"The policy behind ORS 20.080 'is to encourage settlement of small claims, to prevent insurance companies and tortfeasors from refusing to pay just claims, and to discourage plaintiffs from inflating their claims.'" *Bedford v. Merety Monger Trust*, 251 Or App 778, 783, 286 P3d 912 (2012) (quoting *Rodriguez v. The Holland, Inc.*, 328 Or 440, 446, 980 P2d 672 (1999)).

Here, the trial court denied fees to plaintiff on two bases. First, it concluded that plaintiff's pleaded damages in the two actions should be aggregated and, once aggregated, exceeded the $10,000 statutory limit. Second, it found that defendant had made a pretrial settlement offer in an amount greater than the jury's money award to plaintiff. To prevail on appeal, plaintiff must demonstrate that the trial court erred in both regards. We begin with the aggregation issue.

A. *Aggregation of Plaintiff's Pleaded Damages in Two Actions*

Plaintiff argues that ORS 20.080 does not allow aggregation of a party's pleaded damages in two separate actions, even when the actions are consolidated. He relies on

the text of ORS 20.080(1), which refers to a singular "action," and existing case law as support for his argument.

Defendant counters that the court properly aggregated plaintiff's pleaded damages in the two actions, because plaintiff otherwise would be rewarded for claim splitting. The rule of bar is part of the doctrine of claim preclusion. *State ex rel English v. Multnomah County*, 348 Or 417, 432, 238 P3d 980 (2010). It "prohibits parties from splitting claims by requiring plaintiffs to bring all claims arising from the same factual transaction or circumstances in a single action." *Id.* (internal quotation marks omitted). "Thus, a plaintiff who has brought an action against a defendant and obtained a final judgment in that action is prohibited from later bringing an action against the same defendant based on the same factual transaction or circumstances." *Id.*

The question before us on appeal, then, is whether two actions may be treated as one "action" for purposes of ORS 20.080(1), when they are consolidated under circumstances in which keeping them separate would amount to claim splitting. The answer to that question lies largely in existing case law.

We begin by recognizing that a "cause of action" or "claim" is understood more broadly now than it used to be. *See Peterson v. Temple*, 323 Or 322, 330, 918 P2d 413 (1996) (recognizing that, "as a matter of state common law," the Oregon Supreme Court "had defined the concept of a 'claim' more narrowly" in 1936 than it did in 1996). Historically, plaintiffs had greater freedom to bring separate actions arising out of the same factual transaction, as reflected in some early Supreme Court cases applying ORS 20.080 with which we begin our discussion. It should be noted that the text of ORS 20.080 has remained materially unchanged since its enactment, except that the damages limit was originally based on recovered damages (whereas it is now based on pleaded damages) and the dollar amount of the limit has been raised several times. *Fresk v. Kraemer*, 337 Or 513, 519 n 6, 99 P3d 282 (2004).

Two older cases of particular relevance are *Atkinson Corp. v. Lumbermen's Cas. Co.*, 236 Or 405, 408-09, 389 P2d 32 (1964), and *Johnson v. White*, 249 Or 461, 463, 439 P2d 8

(1968). In *Atkinson*, the general contractor on a bridge-building project was assigned dozens of small claims by car owners whose cars allegedly sustained minor damage due to a subcontractor's negligence. 236 Or at 407-08. The subcontractor's insurer brought a suit in equity, seeking to require that the claims be brought together in a single complaint, so that the pleaded damages would exceed the limit in ORS 20.080. *Id.* at 409. The Supreme Court concluded that it was the general contractor's choice whether to bring the "causes of action" separately or join them in a single complaint. *Id.* at 412. Moreover, the court suggested, even if joined in a single complaint, the pleaded damages would not be aggregated for purposes of ORS 20.080. *Id.* Because the pleading statute in effect at that time required each cause of action to be stated separately, "[e]ach cause of action would retain its separate identity, and ORS 20.080, authorizing the recovery of attorney's fees, would apply to each cause of action." *Id.*

A few years later, the court limited *Atkinson* in *Johnson*. The plaintiff in *Johnson* filed a single complaint that "brought action against [the] defendant for personal injury in one cause of action for $5,699.20, and property damage in another for $379.00." 249 Or at 462. The jury found in the plaintiff's favor on property damage, and the plaintiff sought attorney fees under ORS 20.080, which then had a $1,000 limit. *Id.* The Supreme Court held that the availability of fees under ORS 20.080 depended on "the total demand, regardless of the number of causes of action." *Id.* at 464. It rejected the plaintiff's argument that the $1,000 limit applied "to each cause of action, not to the total demand of a complaint that joins causes of action," describing that approach as "too broad" a reading of *Atkinson* and not reflective of "the legislative intent in ORS 20.080, or the intent of this court in deciding the *Atkinson* case." *Id.* The court acknowledged that the plaintiff would have been entitled to fees if he had brought two separate actions—one for personal injury, and one for property damage—and that its holding might encourage the bringing of separate actions, but viewed that as a matter "of legislative, not judicial, concern." *Id.*; *see also Winters v. Bisaillion*, 153 Or 509, 512, 57 P2d 1095 (1936), *overruled in part by Peterson*, 323 Or at 331-32 (recognizing that, at that time, separate actions

could be brought for personal injury and property damage caused in a single accident, and a judgment in one would not bar prosecuting the other).

Modernly, the Supreme Court takes a broader view of a "cause of action" or "claim" than it once did. In keeping with the Restatement (Second) of Judgments (1982), all theories of recovery and all types of damages arising from a "transaction or series of connected transactions" must be brought in a single complaint. *Drews v. EBI Companies*, 310 Or 134, 141, 795 P2d 531 (1990) ("To prevent splitting of the dispute or controversy, courts employ a broad definition of what could have been litigated. Claim preclusion conclusiveness between the parties applies 'with respect to all or any part of the transaction, or series of connected transactions,' out of which the action or proceeding arose.'" (Quoting Restatement (Second) of Judgments, § 24(1)); *see also Krisor v. Lake County Fair Board*, 256 Or App 190, 195-96, 302 P3d 455, *rev den*, 354 Or 61 (2013) (discussing history of the rule against claim splitting). Failure to do so may result in application of the doctrine of claim preclusion in a later action. *English*, 348 Or at 432.

It is therefore no longer possible, for example, to file separate complaints for personal injury and property damage arising from the same accident, with each action separately subject to ORS 20.080, as it was when *Johnson* was decided. A plaintiff may choose to plead lower damages to come within the ambit of ORS 20.080, but it is no longer possible to effectively double the cap by filing separate actions. Or, at least, one who attempts to do so is likely to face claim preclusion in the second action.

Notwithstanding that shift in the case law, we understand the principles underlying the older case law regarding ORS 20.080 to remain valid. There are two key takeaways in particular. Under *Johnson*, where multiple claims are pleaded in a single complaint, the pleaded damages are aggregated for purposes of ORS 20.080(1). Conversely, under *Atkinson*, as reaffirmed in *Johnson*, where claims are brought in separate actions, each action is considered separate for purposes of ORS 20.080(1).

With that in mind, we turn to more recent case law. In *Steele v. A & B Automotive & Towing Service, Inc.*, 135 Or App 632, 636-37, 899 P2d 1206 (1995), we extended *Johnson*, holding that, where a plaintiff brings two "entirely unrelated" claims in the same complaint, the pleaded damages must be aggregated for purposes of ORS 20.080. "Nothing in *Johnson* either implicitly or explicitly limits its holding to claims that arise from the same transaction." *Id.* at 636. We recognized that our holding could incentivize plaintiffs not to bring unrelated small claims in a single action, where separating them would keep one or both actions under the damages cap in ORS 20.080, but we viewed the statutory language and *Johnson* as dispositive. *Id.* at 636-37. In *Wyatt v. Sweitz*, 146 Or App 723, 733, 934 P2d 544, *rev dismissed*, 326 Or 63 (1997), *overruled on other grounds by Rodriguez*, 328 Or at 446-47, we similarly concluded that the plaintiff was not entitled to attorney fees under ORS 20.080, where his complaint alleged multiple claims, and the claimed damages together exceeded the statutory cap.[4] By contrast, where multiple claims are pleaded or litigated in the *alternative*, the pleaded damages are not to be aggregated. *Bedford*, 251 Or App at 785-86.

As for consolidation, we have held that consolidation of cases does not create a single "action" for purposes of ORS 20.080. In *Rath v. Haycock*, 137 Or App 456, 464, 905 P2d 854 (1995), two couples were involved in a real property dispute, and each couple filed an action against the other. The actions were consolidated and tried together. *Id.* at 459-60. The couple who prevailed sought attorney fees under ORS 20.080, even though they had not made a pretrial demand, and the trial court awarded fees. *Id.* at 463-64. On appeal, the prevailing couple defended the court's ruling, arguing that, given the consolidation, the actions should be treated as a single action and their claim as a counterclaim, in which case no pretrial demand was required under ORS 20.080(2). *Id.* at 465; *see* ORS 20.080(2) (allowing a fee

---

[4] We also held in *Wyatt*, 146 Or App at 733-34, that the initial complaint controlled, refusing to consider a later amended complaint that sought damages below the statutory cap. That aspect of *Wyatt* was overturned by the Supreme Court in *Rodriguez*, 328 Or at 446-47, which holds that the operative complaint controls.

award on a counterclaim in a small tort case without a pre-trial demand); *Halperin v. Pitts*, 352 Or 482, 487, 494-98, 287 P3d 1069 (2012) (confirming that construction of ORS 20.080(2)). We rejected that argument, explaining that the actions remained separate, notwithstanding consolidation: "Consolidation of actions does not merge suits into a single cause or change the rights of the parties. Because defendants made their claim for damages in their separate action against plaintiffs, ORS 20.080(1) controls." *Id.* at 465-66 (internal citation omitted). It was therefore error to award fees under ORS 20.080(1), as the prevailing couple had not made the requisite pretrial demand before filing their action. *Id.* at 466.

Finally, we consider *Beers v. Jeson Enterprises*, 165 Or App 722, 998 P2d 716 (2000) (en banc). While shopping at a craft store, the plaintiff was detained by store employees, then arrested by the police for shoplifting. *Id.* at 724. She was later charged with theft, but a jury acquitted her. *Id.* Her attorney sent a $4,000 demand letter to the store's owner and an identical letter to the store's manager. *Id.* The store declined to settle. *Id.* at 725. The plaintiff then filed two separate complaints against the entities that owned the store—one asserting a claim of false imprisonment, and the other asserting a claim of malicious prosecution—seeking $4,000 in each action. *Id.* The two actions were consolidated and went to arbitration, where the plaintiff prevailed in both. *Id.* The issue on appeal was whether the plaintiff was entitled to attorney fees under ORS 20.080, which turned in part on how the demand letters should be viewed. *Id.* at 725-26. The damages limit in ORS 20.080 was $4,000 at the time. *Id.* at 726.

We concluded that the letters should be treated as two copies of a single $4,000 demand, and we held that the plaintiff was therefore entitled to attorney fees in one action, having met the pretrial demand requirement in ORS 20.080 for one action. *Id.* at 726-28. We explained that one demand letter allowed the plaintiff to seek attorney fees in one action for $4,000, and that it did not matter that she had filed a second action in which she could not seek attorney fees, or that the two actions had been consolidated. *Id.*

at 727-28. We expressly rejected the idea that consolidation mattered: "Nothing in ORS 20.080(1) suggests a different result merely because the separate actions were consolidated for trial." *Id.* at 728. In a footnote, we rebuffed a dissenting judge's concerns about claim splitting, stating that there had "never been a dispute over the separately actionable nature of plaintiff's claims," and concluding, "At least on the record before us, and given the lack of any dispute over the point, we have no basis to conclude that plaintiff improperly split a single cause of action in this case." *Id.* at 728 n 4.

As relevant here, the upshot of *Beers* is that, at least absent a dispute over claim splitting, separate actions remain separate for purposes of ORS 20.080, even if they have been consolidated. That is consistent with *Johnson*.

The open question is the one that we face in this case, which is whether the outcome is different when claim splitting is at issue. That is, if a party seeks damages in two separate actions on claims arising from the same transaction or series of connected transactions, may the trial court aggregate the pleaded damages in the two actions for purposes of ORS 20.080, particularly when the cases are consolidated?

The answer is no. On its face, ORS 20.080(1) applies to a singular "action." *See* ORS 20.080(1) ("In *any action* for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $10,000 or less, and the plaintiff prevails in *the action*, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of *the action*, \*\*\*." (Emphases added.)). Under *Johnson*, separate actions are considered separately for purposes of ORS 20.080(1), and under *Rath* and *Beers*, consolidation is irrelevant for purposes of ORS 20.080(1). Nothing in ORS 20.080(1) or the case law supports taking a different approach to avoid a party benefitting from improper claim splitting.

In other words, ORS 20.080(1) does not allow courts to treat separate actions as a single action to remedy claim

splitting.[5] Instead, concerns about claim splitting must be addressed through the normal procedural mechanisms, such as moving to dismiss the second action under ORCP 21 A(1)(c), which should prompt an inquiry informed by claim preclusion principles, *Borough v. Caldwell (A172579)*, 314 Or App 62, 67, 497 P3d 766 (2021), or raising claim preclusion as an affirmative defense, *Troutman v. Erlandson*, 287 Or 187, 196, 598 P2d 1211 (1979).

We note that it does not matter how there came to be two separate actions. In this case, as it happens, it was not plaintiff who initiated a second action. Plaintiff filed his action, and, when defendant filed a second action arising from the same altercation, it was actually plaintiff who tried to get the second action dismissed under ORCP 21 A(1)(c). Defendant successfully opposed dismissal of the second action, then got the actions consolidated over plaintiff's objection. Only then did plaintiff file a counterclaim in the second action. Under the circumstances, the fact that plaintiff ended up with claims in two actions may be more attributable to defendant's litigation strategy than plaintiff's. In any event, regardless of how there came to be two actions, ORS 20.080 does not provide a mechanism to address claim splitting.

The court erred in aggregating the pleaded damages on plaintiff's claims in separate actions to deny attorney fees under ORS 20.080(1). Plaintiff's pleaded damages in this action were $10,000, bringing the action under the damages cap in ORS 20.080.

## B.  *Application of the Tender Provision of ORS 20.080*

Having concluded that the first basis for the trial court's denial of attorney fees was unsound, we next consider its alternative basis for denying fees: that defendant made a pretrial tender of $5,100, which exceeded the jury's award. *See* ORS 20.080(1) ("[N]o attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the

_____

[5] Because ORS 20.080(1) does not allow the two actions between plaintiff and defendant to be treated as a single "action" for purposes of ORS 20.080(1), it is irrelevant whether the trial court was correct that the separate actions amount to claim splitting, so we do not address that issue.

action * * *, an amount not less than the damages awarded to the plaintiff.").

As previously described, plaintiff sent a demand letter to defendant, asserting a $10,000 battery claim, and separately sent a demand letter to defendant's wife, Jenny Jacobs, asserting a claim for false arrest. The insurance agent of defendant and his wife then emailed the following offer to plaintiff, which plaintiff rejected:

> "In response to the ORS 20.080 demand regarding the claim of Timothy Frost, I have made a settlement offer regarding the claim to Justin Jacobs in the amount of $5100 inclusive of all issues and the claim of Jenni Jacobs in the amount of $1086.00 inclusive of all issues. If our offer is acceptable, I will send to you the release of all claims."

As we understand it, the trial court concluded that, on its face, the email contained two independent offers: (1) an offer to settle plaintiff's claim against defendant for $5,100, in exchange for a release of claims against defendant, which was a "tender" for purposes of ORS 20.080(1); and (2) a separate offer to settle plaintiff's claim against Jenny Jacobs for $1,086, in exchange for a release of claims against her. Further, we understand the court not to have considered (or made any credibility findings regarding) plaintiff's proffered evidence that the insurance agent orally confirmed to plaintiff's counsel that the email offer required acceptance of both offers and the release of all claims against both defendant and his wife. The parties disagree on appeal as to whether the court should have considered that evidence, as discussed more later.

With that understanding of the court's ruling, we turn to the legal issue. The term "tender," as used in ORS 20.080(1), originates in Oregon's common law. *Fresk*, 337 Or at 523. At common law, "a lawful 'tender'" "required the actual production, in current coin of the realm, of a sum not less than the amount due." *Malan v. Tipton*, 349 Or 638, 646, 647, 247 P3d 1223 (2011) (internal quotation marks omitted). However, ORS 81.010, which was enacted in 1862 and has never been amended, permits an offeror "to substitute a written offer of payment for the production of money." *Id.* at 646; *see* ORS 81.010 ("An offer in writing to pay a

particular sum of money or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."). ORS 81.010 thus essentially allows constructive tender—a written offer in lieu of actual payment. The Supreme Court implicitly recognized in *Fresk* that "tender" in ORS 20.080 includes both the original meaning and the alternative permitted by ORS 81.010. *See Fresk*, 337 Or at 526 (treating a written offer as a "tender" for purposes of ORS 20.080).

Under *Fresk*, for purposes of ORS 20.080(1), as in other contexts, a "tender" includes a written "offer of payment that is coupled either *with no conditions* or *only with conditions upon which the tendering party has a right to insist.*" 337 Or at 522 (emphases added); *see also, e.g.*, *Gardner v. Cox*, 117 Or App 57, 63, 843 P2d 469 (1992) (stating that to come within ORS 742.061—a statute that, like ORS 20.080, sets out circumstances in which a tender may extinguish a right to attorney fees—"a tender must be absolute and unconditional, except that it may be accompanied by a condition on which the tendering party has a right to insist"). Permissible conditions are limited to those on which the tendering party has a right to insist. The legislature did not intend to "enable a defendant to avoid an award of attorney fees to a plaintiff under ORS 20.080(1) with a prelitigation payment offer subject to any condition of the defendant's choosing." *Fresk*, 337 Or at 522.

Thus, a valid tender may include a condition requiring "release from further liability for the disputed claim at issue," as that is a condition on which the defendant has a right to insist. *Id.* at 526 (such a condition "does not demand more than the defendant is entitled to require as a condition to payment"). However, a defendant does not have a right to insist on, for example, confidentiality, so an offer that includes that condition is not a valid tender for purposes of ORS 20.080(1). *Reed v. Jackson County Citizens League*, 183 Or App 89, 96, 50 P3d 1287, *rev den*, 335 Or 142 (2002) (so holding, because the defendant "had no legal entitlement to insist" on confidentiality).

Plaintiff contends that defendant's email offer was not a "tender" for purposes of ORS 20.080(1), because it was conditioned on plaintiff agreeing to a global release of all claims against both defendant and Jenny Jacobs, rather than requiring only a release of further liability on the battery claim against defendant. Plaintiff argues that defendant had no right to insist on a release of claims against defendant other than the battery claim, or to insist on a release of claims against Jenny Jacobs. In response, defendant argues that he was legally entitled to insist on a release of all claims against him, and he argues that the offer to settle the claim against him was independent of the offer to settle the claim against Jenny Jacobs and did not require a release of claims against Jenny Jacobs.

The second issue—regarding release of claims against Jenny Jacobs—is dispositive. It is undisputed that, to qualify as a "tender" for purposes of ORS 20.080(1), defendant's offer to plaintiff could not be conditioned on plaintiff agreeing to settle his claims against Jenny Jacobs or release all claims against Jenny Jacobs, because that is not a condition on which defendant had a right to insist. The trial court concluded that the email on its face included an offer from defendant to plaintiff that did not require plaintiff to settle with Jenny Jacobs or release all claims against Jenny Jacobs. We disagree.

On its face, the email is ambiguous as to whether it contains two independent offers or whether the offers are dependent on one another and can only be accepted together; that is, it is susceptible to more than one plausible interpretation.[6] Again, the email states:

> "In response to the ORS 20.080 demand regarding the claim of Timothy Frost, I have made a settlement offer regarding the claim to Justin Jacobs in the amount of $5100 inclusive of all issues and the claim of Jenni Jacobs in the amount of $1086.00 inclusive of all issues. If our offer is acceptable, I will send to you the release of all claims."

---

[6] *See Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 277, 325 P3d 49, *rev den*, 355 Or 879 (2014) (a contract provision is ambiguous if it is susceptible to more than one "plausible" interpretation); *PGF Care Center, Inc. v. Wolfe*, 208 Or App 145, 151, 144 P3d 983 (2006) (a contract provision "is unambiguous only if its meaning is so clear as to preclude doubt by a reasonable person" (internal quotation marks omitted)).

The email begins unhelpfully with the phrase "[i]n response to the ORS 20.080 demand regarding the claim of Timothy Frost," which suggests that the insurer is responding to a single demand letter, when in fact plaintiff sent separate demand letters to defendant and to Jenny Jacobs. The email then proceeds to address the claims against both defendant and Jenny Jacobs in an unclear way. On the one hand, the email states individual dollar amounts for each claim, rather than a single amount for both claims, which seems to suggest independent offers. On the other hand, the email consistently uses "offer" in the singular, and it concludes with a statement regarding "the release of all claims," which seems to suggest a single offer that must be accepted or rejected *in toto*.

Because the email is ambiguous as to whether defendant is conditioning his $5,100 offer of payment only on a release of claims against defendant or, instead, also conditioning it on plaintiff accepting the offer as to defendant's wife and releasing all claims against defendant's wife, the email was not a valid "tender" for purposes of ORS 20.080.[7] As described earlier, a "tender" requires either the actual production of money or a written offer of payment that serves the same purpose. *See* ORS 81.010; *Fresk*, 337 Or at 522. When a written offer of payment is substituted for the actual production of money, the written offer of payment must be "coupled either with no conditions or only with conditions upon which the tendering party has a right to insist." *Fresk*, 337 Or at 522. Making a written offer of payment on ambiguous terms does not serve the same purpose as an unambiguous production of money. *See Malan*, 349 Or at 648 ("[T]o serve the same function as the production of money, and to satisfy the requirements of ORS 81.010, a written offer of payment must communicate a present offer of timely payment."); *see also Gardner*, 117 Or App at 63 (noting that "a tender must be absolute and unconditional, except that it may be accompanied by a condition on which the tendering party has a right to insist").

---

[7] We note that neither party argues that any pre-offer communications provided context for the offer that rendered it unambiguous. *See Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006) ("[T]o determine whether a contractual provision is ambiguous, the trial court can properly consider the text of the provision in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract.").

Of course, if a defendant makes an offer that is ambiguous as to the attached conditions, the plaintiff may seek clarification—as plaintiff claims to have done here—or, in any event, the defendant may provide clarification. However, because an offer must be in writing to qualify as a tender, it logically follows that any clarification or revision that is necessary to resolve an ambiguity in the offer and create a valid "tender" must also be in writing. *Cf. Johnson v. Swaim*, 343 Or 423, 430, 172 P3d 645 (2007) (stating, with respect to ORS 20.080(1), that "[t]o permit an insufficient *written demand* [by the plaintiff] to be 'cured' by an oral communication would effectively nullify the statutory command that the notice be in writing" (emphasis added)).

In this case, there is evidence in the record of post-offer communications that the trial court did not consider, and the parties disagree as to whether that evidence should have been considered. However, we need not decide that question, because, in any event, there is no evidence of any writing by defendant (or his agent) that clarified whether defendant's offer was independent and conditioned only on a release of claims against defendant or, instead, was dependent on plaintiff also settling with defendant's wife and releasing all claims against both defendant and his wife.[8] As such, the extrinsic evidence that the trial court declined to consider would not affect our disposition. Defendant's ambiguous written offer was not a "tender" for purposes of ORS 20.080(1).

### III. CONCLUSION

Under ORS 20.080(1), plaintiff was entitled to attorney fees in plaintiff's action, case number 19CV12847, and the trial court erred in concluding otherwise. The pleaded damages were $10,000, which is within the statutory limit,

---

[8] Plaintiff argues that the trial court should have considered extrinsic evidence of post-offer *oral* communications between plaintiff's counsel and the insurance agent, as well as emails written by *plaintiff's counsel*, whereas defendant argues that the court correctly refused to consider any extrinsic evidence. Neither party mentions a letter in the record from the insurance agent to plaintiff's counsel, dated two days after the email offer, apparently confirming a phone conversation. Even if we were to consider that writing, notwithstanding that no one relies on it, it would not affect our decision, because it does not clarify the ambiguity at issue.

and no pretrial tender was made for purposes of ORS 20.080(1). On remand, the court is to award attorney fees to plaintiff, then address anew costs and the prevailing party fee.

Reversed and remanded.